### Gulf, Colorado & Santa Fe Railway Company v. City of Belton et al.

Decided November 10, 1909.

**1.—Cities—Streets—Railway Crossings—Nuisance—Abatement.**

The statutes giving to a city council power to control its public streets (Rev. Stats., art. 419) to declare what shall be nuisances and to summarily abate them (Rev. Stats., art. 453) and to control the laying of railway tracks and maintenance of crossings of public streets over them (Rev. Stats., art. 40) do not authorize it to declare that to be a nuisance which is in fact not such,

and on the strength of its mere declaration that such is the fact to summarily destroy or abate the same without liability for damages, if the thing complained of be found, from the evidence in such action for damages, not to be a nuisance as matter of fact.

### 2.—Same—Case Stated.

A railway company constructed an overhead crossing for a public road, over its track, at a point outside the limits of a city at the time, but subsequently included therein by an extension of the corporate boundaries; the city council thereafter, by resolution, declared the structure a nuisance and instructed the railway to remove it; on failure of the company to comply, the city authorities, by direction of its council, removed the overhead crossing wooden bridge and were proceeding to remove the approaches when restrained by injunction and action for damages by the railway company; the city, by cross-action sought mandamus to require the company to construct a crossing at grade  Held, that the questions whether the structure removed was a nuisance and subject to summary abatement by the city without liability for damages, and whether a crossing at grade was practicable by reason of the danger, it being in a deep railway cut, were of fact to be determined by the evidence, and that it was error for the court to treat the declaration of a nuisance by the council as conclusive and direct a verdict in favor of the city.

### 3.—Evidence—Expert—Railway Crossing.

A civil engineer, experienced in railway construction and giving the facts on which his opinion was based, should have been permitted to testify that it was not feasible to put in a street crossing at grade in a certain railway cut, in an action for mandamus to require a railway company to construct a crossing of such character.

Appeal from the District Court of Bell County.  Tried below before Hon. John D. Robinson.

*Terry, Cavin & Mills* and *A. H. Culwell,* for appellant.—The resolution or ordinance offered by the defendants, and set out in the bill of exceptions, conferred no rights upon the defendants herein, and could not be used as a defense in this case, and same was wholly immaterial, because the bridge in question and the approaches thereto was not such a nuisance as is recognized to be such under the common law, nor was it such a structure as became, and was, a nuisance *per se* under any statute law of this State, and it did not become a nuisance and confer the right of destruction thereof upon the defendants herein just because the city council of Belton declared it to be a public nuisance, and the passage of this ordinance or resolution did not make said bridge a public nuisance, and the rights of the plaintiff herein were not foreclosed nor concluded by the passage of any such ordinance, motion or resolution, but whether said bridge and the approach was a public nuisance became, and was, a question of fact to be determined upon hearing in a court of competent jurisdiction.  Yates v. Milwaukee, 77 U. S., 497; Lynn v. State, 33 Texas Crim. Rep., 153; Western & A. Ry. v. Atlanta, 38 S. E., 996; City of Dallas v. Allen, 40 S. W., 324; Teass v. City of St. Albans, 17 S. E., 400; Ex parte Robinson, 17 S. W., 1057; City of Denver v. Mullen, 7 Colo., 345; Pye v. Peterson, 45 Texas, 312; 29 L. R. A., 303; Des Plains v. Poyer, 123 Ill., 348; 36 L. R. A., 593; American Furniture Co. v. Batesville, 38 N. E., 408.

The city council of Belton did not have the authority to remove this

bridge summarily, nor did it acquire the right so to act by the passage of the motion or resolution herein complained of. Same authorities.

The city council of Belton was, and is, only authorized and empowered to pass an ordinance defining generally what shall be considered a nuisance, and prescribe penalties for the violation thereof, but the litigant, or defendant, is entitled, under all circumstances, to his day in court. · Same authorities.

The City of Belton exceeded its authority in ordering a destruction of this bridge, in the manner and form that it did. Its act, in the premises, was oppressive, and was a denial to the plaintiff herein of that due process of law accorded to it by the Bill of Rights and by the Constitution of the United States. The said order is absolutely void, and can not justify the usurpation of power exercised by the defendants herein. Same authorities.

As this bridge was in existence before that territory became a part of the City of Belton, the city is estopped from removing the same, as it took the territory with all conditions then existing. Same authorities.

The evidence showing as it did that the witness Rutledge was an expert civil engineer and had a number of years of experience in the construction of railroads, railroad crossings, including viaducts and grade crossings, and was familiar with the crossing in question, he was competent to express an opinion as to whether or not it was feasible to put in a grade crossing over plaintiff's tracks at the place in question, and the issue was one which called for the expression of expert opinion.

There was evidence in this record that a grade crossing should not be established at the point in question. That the view of the crossing was obscured. This raised an issue of fact which should have gone to a jury where it could be determined as to whether or not a grade crossing ought to be established, and the court could not take this issue away from the jury. State v. Minnesota T. Ry., 80 Minn., 108; People v. Dutchess Ry., 58 N. Y., 152.

*John H. Durrett, A. L. Curtis* and *James F. Hair,* city attorney, for appellee.—The city council have the exclusive control and power over the streets of the city, and to abate and remove encroachments or obstructions thereon (Rev. Stats., art. 419); to abate and remove nuisances and to define and declare what shall be nuisances and authorize and direct the summary abatement thereof (Rev. Stats., art. 453); to abate all nuisances which may affect the public health or comfort in any·manner they may deem expedient (Rev. Stats., art. 447); to direct and control the laying and constructing of railroad tracks, etc., and to require railway corporations to construct and keep in repair suitable crossings at the intersection of streets, etc., when they shall deem it necessary (Rev. Stats., art. 40); such corporations shall restore the street or highway to its former state or to such state as to not unnecessarily impair its usefulness, and shall keep such crossing in repair (Rev. Stats., art. 4426), and shall keep that portion of the roadbed and right of way across which any public county road may run

in proper condition for the use of the traveling public (Rev. Stats., art. 4435).

Where a county public road is taken into a city by annexation of the territory which it traverses, it becomes a city street without formal action on the part of the city. Louisville v. Brewer's Adm'r, 72 S. W., 9; Park v. Orth, 73 S. W., 1015; Mackin v. Wilson, 45 S. W., 663; Llano v. Llano County, 5 Texas Civ. App., 132; 27 Am. & Eng. Ency. of Law, 104, 28 Cyc., 837.

The express power given by our State to the city council to grade streets is a legislative or judicial power and can not be controlled by the courts. Adams v. Fisher, 75 Texas, 657; Wootters v. Crockett, 11 Texas Civ. App., 474, 27 Am. & Eng. Ency. Law, 122.

The nature and character of a particular improvement calls for the exercise of discretion on the part of the city council which can not be reviewed by the courts. Alford v. Dallas, 33 S. W., 816; Gulf, C. & S. F. Ry. Co. v. Riordan, 22 S. W., 519; 27 Am. & Eng. Ency. Law, 127.

The city having a lawful right to the possession and control of the streets had the power and authority to enter upon said street and remove whatever obstruction might be found thereon, and it was the exclusive province of the city to determine what was an obstruction. Corsicana v. Zorn, 97 Texas, 324; Perry v. Bell, 113 S. W., 588; Compton v. Waco Bridge Co., 62 Texas, 715; 27 Am. & Eng. Ency. Law, 160.

Appellant is required by the statute to construct a suitable crossing at the point in question; it has failed and refused and still fails and refuses to do; and the writ of mandamus was properly awarded to compel it to perform its legal duty. See authorities under preceding propositions; also that the writ of mandamus will lie to compel a railway company to construct and maintain proper street crossings. 26 Cyc., 367, citing decisions from many States, and Houston & T. C. Ry. Co. v. Dallas, 98 Texas, 396.

RICE, ASSOCIATE JUSTICE.—It was shown that in 1877 the County Commissioners' Court of Bell County laid out and established a third-class public road, known as the Belton and Tennessee Valley public road, leading from the end of Main street on the north line of the corporation of Belton, as it then existed, in a northerly direction, to the Leon River; and in 1882 the appellant constructed its roadbed across said public road a short distance north of the end of Main street in said city. In 1885, said road was changed by the Commissioners' Court to a second-class road, and made sixty feet wide, the same width as Main street in said city, making the same an extension of said street north across the roadbed of appellant. In 1888 appellant built an overhead crossing over its track and over said public road. In 1894 the corporate limits of the City of Belton were extended some half mile to the north; said strip of new territory included the Belton and Tennessee Valley public road for a half mile from the north line of the original city limits, embracing said public road where the same was crossed by appellant's track. It appeared that the appellant's line of railroad had been constructed and in operation for more than

twenty-five years over said public road, and that this bridge was con-
structed before that part of the territory was annexed to the City of
Belton, and that the same had been maintained during said time by
appellant, and had been continuously in use by the public since its
construction as a crossing.

On the 3d of February, 1909, the City of Belton, acting through its
officers and agents, removed the bridge and were in the act of remov-
ing the earthen approaches thereto when the temporary writ of injunc-
tion applied for was issued, restraining said city from further inter-
fering therewith.   Said City of Belton is a municipal corporation, in-
corporated under the general laws of the State of Texas, and at the
time of the removal of said bridge D. E. Patterson was its acting
mayor, W. T. Hale was its acting marshal and E. W. Ferguson was its
acting secretary.   It further appeared that the acts of Patterson and
Hale in the removal of the bridge, and the attempted removal of the
approaches to it, had been done in their official capacity, and that the
same were ordered, directed and ratified by the City of Belton.

On the 10th day of February, 1909, appellant brought this suit
against the city and its officers above named, for the recovery of actual
and exemplary damages occasioned by the removal of said bridge, and
for an injunction restraining the City of Belton and its officials from
further destroying the approaches thereto, as well as any attempt on
their part to construct a grade crossing at said point, alleging the facts
hereinbefore stated; and further, that its tracks on either side of Main
street ran through a deep cut, and the view of one approaching its
tracks from either direction along said street was obstructed to such
an extent that it would be extremely dangerous to have or maintain a
grade crossing over its tracks at said place.

A temporary writ of injunction was issued.   Appellees answered by
general and special exceptions and by special answer, to the effect that
the bridge in question was within the city limits of the City of Belton
and across one of its public streets, and that the city had power and
control over its streets, and that the same was an obstruction thereto,
and that the wooden portion of said bridge had been removed by the
city after the same had been declared a nuisance by the city council,
and after the city marshal had been directed by the city council to
remove the same.   Appellees by cross-action sought by mandamus to
compel the railway company to put in a grade crossing at the place in
question.

Appellant specially excepted to this answer, pleading the invalidity
of the act of the city council declaring the bridge in question a nui-
sance, and denying the right of said city to summarily remove the
same.

There was a jury trial, upon the conclusion of which the court di-
rected a verdict in favor of the defendants upon all the issues raised
by the pleadings, and judgment was rendered in accordance therewith,
that appellant take nothing by its action for damages, and that the
temporary injunction formerly issued should be dissolved, and that the
writ of mandamus as prayed for by the city be awarded.   A new trial
having been refused, appellant prosecutes this appeal.

The chief questions for our consideration, as raised by the several

assignments of error, are, first, whether the bridge in question, within itself, was such a nuisance, either at common law or by statute, as would authorize said city to summarily abate it; or whether the question of nuisance *vel non* was one of fact to be determined by the jury under proper instructions from the court. Appellees justify their action on the ground that the bridge was an obstruction to the street, and therefore a nuisance *per se,* and that by virtue of the resolutions or ordinances passed by its city council, it was authorized to summarily abate the same by a removal thereof. Appellant, on the contrary, contends that whether such structure constituted a nuisance was a question of fact to be determined by the jury; and that the ordinances or resolutions passed by the city council authorizing its destruction were absolute nullities and could not be plead in justification of this action.

The resolutions or ordinances under which the city undertook to justify its acts in the removal of said bridge and the attempted removal of the approaches thereto, and which were offered in evidence on the trial over appellant's objection, are as follows:

"Extract from minutes of city council, under date of September 11, 1907:

"1st. Resolved, That the Street Committee be instructed to cooperate with the Santa Fe agent in regard to establishing a proper crossing across Main street. Motion carried.

"2d. November 13, 1907. Moved and seconded that the Main street bridge over the Santa Fe railway be declared a public nuisance. Motion carried.

"3d. August 18, 1908. Moved and seconded that the marshal be instructed to remove the bridge over the Santa Fe track on Main street that has been declared a public nuisance at a previous meeting of the council. Motion carried."

The evidence discloses that this bridge had been constructed and maintained by the appellant at its own expense and had been in continuous use by the public in traveling said public road for a period of over twenty-five years, during which time no complaint previous to the present one appears to have been made. It is true that it is shown that some time in 1907 there had been a conference between the representatives of the city and of the railroad company relative to this structure in pursuance of the resolutions passed by the city council, but no demands to remove the same appear to have been then or thereafter made, and no definite action was taken by the city in reference thereto at said time. It appears that at times travel over said bridge was inconvenienced by reason of the narrow passageway across the same (the bridge being only about eighteen feet wide and not covering the entire space of the street) and the steep ascent thereto, which rendered it difficult in a wet time to haul heavy loads thereover.

It was shown on the part of appellant that its tracks for some distance on either side of said street approached the same through a deep cut, and that it was impossible for persons traveling said highway, or for persons operating its trains in approaching the same, to see each other for a distance of something like 200 feet from said crossing, and that there was great danger and would necessarily continue to be great

danger in operating its road over said street with safety to the public, unless said overhead bridge was maintained. And appellant offered to show that it would be impracticable to construct and maintain a grade crossing at said point, but such evidence was excluded upon appellees' objection, which is also assigned as error and will be hereafter discussed.

While it is true, as contended by the city, that under our law it is provided that the city council shall have exclusive control and power over its streets, alleys, public grounds and highways, and to abate or remove encroachments or obstructions thereon, to open, alter, widen, extend, establish, regulate, grade and otherwise improve its streets (Rev. Stats., art. 419); and that the city council shall have the power to abate and remove nuisances and to punish the author thereof by penalties, fines and imprisonment, and to define and declare what shall be nuisances, and authorize and direct summary abatement thereof (Rev. Stats., art. 453); and that the city council shall likewise have the power to direct and control the laying and construction of railroad tracks, etc., to require railroad corporations to construct and keep in repair suitable crossings at the intersection of streets, etc., when the city council shall deem it necessary (Rev. Stats., art. 40), still, we are not inclined to believe that, by reason of these provisions of our statute, a city council is authorized to declare that to be a nuisance which is in fact not such, and by reason of its mere declaration so denominating it a nuisance, to summarily destroy or abate the same; but that in all such cases, whether the particular thing complained of is a nuisance, is a question of fact. And this, as we understand it, is appellant's contention.

In the case of Yates v. Milwaukee, 77 U. S., 497, where the Legislature of Wisconsin authorized the city of Milwaukee by ordinance to establish dock and wharf lines and prevent encroachments upon the rivers, the city passed an ordinance declaring a wharf erected in the river by Yates to be an obstruction to navigation, and a nuisance, and ordered its abatement, and upon said city attempting to do so Yates sought to restrain it by injunction. Justice Miller, in delivering the opinion of the court, among other things said: "The act of the Wisconsin Legislature, approved March 21, 1854, confers upon the city of Milwaukee the authority to establish dock and wharf lines on the banks of the Milwaukee and Menomonee Rivers, and to restrain and prevent encroachments upon said rivers and obstructions thereto, and it is by this statute that the summary proceedings for the removal of appellant's wharf are supposed to be authorized. But the mere declaration by the city council of Milwaukee that a certain structure was an encroachment or obstruction did not make it so, nor could such declaration make it a nuisance, unless it in fact had that character. It is a doctrine not to be tolerated in this country that a municipal corporation, without any general laws either of the city or of the State within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business and all the property of the city at the uncontrolled will of the temporary local authorities."

In the case of Teass v. the City of St. Albans, 17 S. E., 400, a similar question came before the Supreme Court of West Virginia, in which, quoting from the syllabus, it is said: "A municipal corporation can not, by its mere declaration that a dwelling-house is a nuisance, subject it to removal. It must first resort to some proper judicial proceeding, giving the owner or occupant an opportunity to be heard before his house is condemned and removed as a nuisance." In that case the house projected into one of the public streets of a town. The city council was empowered to declare what a nuisance is and to remove the same—a similar authority as granted by our statute.

In the case of the Western & Atlantic Ry. Co. v. City of Atlanta, 38 S. E., 996, where the right of the city by summary proceeding to declare a depot and the floor thereof to be a public nuisance and remove the same, was up for consideration, the court in discussing a similar question, says: "No detailed statement of the evidence contained in the record is deemed to be necessary, but reference to such parts of it as become material will be considered in the discussion of the legal propositions by which the case is controlled. We shall undertake to establish two propositions as being sound in law and controlling in this case. The first is that neither the municipal authorities of any city in this State nor any department of a city government has the legal right summarily to abate a nuisance, without first having given reasonable notice to the person maintaining the thing or doing the acts alleged to be a nuisance of the time and place of hearing the question whether such thing or the doing of such acts constitute a nuisance, and the determination by such body that the thing so maintained or the acts done in law constitute a nuisance, and this rule of law applies to all acts and things alleged to be nuisances except those which are by the law expressly declared to be nuisances, or which are indisputably so *per se,* and that this is true, notwithstanding the municipal authorities, or any department thereof, have, by the charter of the town or city, been given the power to abate nuisances in such city."

A similar doctrine seems to have been maintained in American Furniture Company v. Batesville, 38 N. E., 408.

In the case of Town of Lakeview v. Letts, 48 Ill., 81, it is said: "There are some things which in their nature are nuisances, and which the law recognizes as such. There are others which may or not be so, their character in this respect depending upon circumstances, and in the latter instance it is manifestly beyond the power of the village to declare in advance that those things are nuisances, and so it was held in that case. The question when the thing may or may not be a nuisance must be settled as one of fact and not of law."

It is said in Wood on Nuisances, 3d ed., vol. 2, sec. 744, that: "Where the Legislature confers upon a city or village the power to regulate and remove nuisances and to provide penalties therefor, or to remove such as are detrimental to the health of the inhabitants, this power confers authority upon the city government to impose penalties upon persons maintaining nuisances within its jurisdiction, and to remove the same, *provided the thing be a nuisance at common law or by statute,* and produces such an injury that an individual injured,

thereby might remove it, but not otherwise, and if the authorities abate a nuisance under authority of an ordinance of the city, they are subject to the same perils and liabilities as an individual if the thing abated is not *in fact* a nuisance. But where the corporation is clothed with power by its charter or special or general law to abate or remove nuisances, that does not confer authority to prevent them, nor to impose penalties for their erection. Neither does authority to prevent nuisances confer authority to abate them. Neither does the power to abate nuisances warrant the destruction of valuable property which was lawfully erected or anything which was erected by lawful authority. It would indeed be a dangerous power to repose in municipal corporations to permit them to declare, by ordinance or otherwise, anything a nuisance which the caprice or interests of those having control of its government might see fit to outlaw, without being responsible for all the consequences, and even if such power is expressly given by the Legislature it is utterly inoperative and void unless the thing is in fact a nuisance, or was created or erected after the passage of the ordinance and in defiance of it. The fact that a particular use of property is declared a nuisance by an ordinance of the city does not make that use of property a nuisance, *unless it is in fact so,* and comes within the common law or statutory idea of a nuisance. Hence authority conferred by an ordinance of the city is no protection against liability for damages resulting from the destruction of property upon the ground that it is a nuisance, unless its lawful character is clearly established. Therefore, except in cases of great public emergency, when the emergency may safely be regarded as so strong as to justify extraordinary measures upon the ground of paramount necessity, or when the use of property complained of is so clearly a nuisance as to leave no room for doubt upon the subject, it is the better course to secure an adjudication from the courts before proceeding to abate it. A municipal corporation which is empowered to declare what shall be nuisances is not thereby authorized to declare that to be a nuisance which is not so in fact. Things which may or may not be nuisances, where their character in this respect depends upon circumstances, can not be so declared in advance. The question when the thing may or may not be a nuisance must be settled as one of fact and not of law."

Judge Dillon, in his work on Municipal Corporations, vol. 1, sec. 374, 4th ed., on this subject says:

"It is to secure and promote the public health, safety and convenience that municipal corporations are so generally and so liberally endowed with *power to prevent and abate nuisances*. This authority and its summary exercise may be constitutionally conferred on the incorporated place, and it authorizes its council to act against that which comes within the legal notion of a nuisance; but such power, conferred in general terms, can not be taken to authorize the extra-judicial condemnation and destruction of that as a nuisance which, in its nature, situation or use, is not such," quoting with approval the doctrine announced in Yates v. Milwaukee, supra.

In Joyce on the Law of Nuisances, at section 332, treating of the power of municipalities to declare things nuisances, it is said: "In the absence of power conferred by the Legislature upon a municipality to

define or declare what is a nuisance, no power is held to be vested in it to declare a certain act or omission a public nuisance. And though the power may be conferred upon a municipal corporation to declare, prevent and abate nuisances, yet this will not justify a wanton declaration that a particular act, thing or avocation is a nuisance which unquestionably is not one. The power must be exercised in a reasonable manner, having in view the personal and property rights of the individual, and the mere fact that a certain thing has been declared by the municipal authorities to be a nuisance does not render it one where it is not in its nature within the common law a statutory idea of a nuisance." See also Des Plains v. Poyer, 123 Ill., 348; City of Denver v. Mullin, 7 Colo., 345. The same doctrine is also approved in Pye v. Peterson, 45 Texas, 312.

In the case of the City of Dallas v. Allen, 40 S. W., 324, where the city was sued for the value of certain wearing apparel destroyed under the authority of an ordinance authorizing the city to do all acts and make all regulations proper for the promotion of health or the suppression of disease, and where there was evidence that the articles could have been safely disinfected, it was held that whether it was necessary to burn the same was a question of fact for the jury, and that it was error to direct a verdict against the city.

Counsel for appellant likewise insists and cites authority in support of the doctrine that in no case can a city summarily abate a nuisance, and that to do so would be, if allowed, the taking of property without due process of law and a violation of the constitutional provisions upon this subject. We are not inclined to adopt this view under the provisions and regulations of our statutes upon the subject hereinbefore quoted. The contrary of the doctrine so asserted by appellant has been announced by Justice Williams in the case of Houston & T. C. Ry. Co. v. Dallas, 98 Texas, 396.

Counsel for appellant likewise objected to the introduction of the resolutions, holding that the same were void because not shown to be in writing nor published in the official paper of the city and deposited with the secretary; and further, because they were not styled: "Be it ordained by the city council of the City of Belton," as required by law, and because they authorized and provided for the condemnation and taking of property, imposed a penalty and forfeiture, and that under our statutes this could only be done by a general ordinance, and that the same must be published, etc., ten days before becoming effective, as provided in article 557. (See articles 404, 464, 557, 559, Rev. Stats.)

From a review of the foregoing authorities we are inclined to believe that where the thing complained of is clearly a nuisance *per se,* coming within the definition of a nuisance either under our statute or by the common law, then the authority for its abatement clearly exists in the city, and that a city could so abate it irrespective of whether there was any ordinance upon the subject or not, and might possibly proceed to do it under an order of its city council. But we hold that in all cases where the thing complained of is not a nuisance *per se,* that no such authority exists. So in the present case, without intending to intimate or hold that the structure complained of is or is not a nui-

sance under the facts, we sustain the assignment complaining of the action of the court in peremptorily instructing the jury to find on this issue in behalf of appellees, because the questions raised by the pleadings and by the evidence were questions of fact for the consideration of the jury under proper instructions from the court.

During the progress of the trial appellant offered to show by its engineer Rutledge that, in his opinion, it was not feasible to put in a grade crossing over plaintiff's tracks at the place in question, but upon objection of appellees he was not permitted to give his opinion upon this subject. It was shown from the bill of exceptions taken to this ruling that the witness was a civil engineer—had had some eighteen years' experience in the construction of railroads, including the grading of tracks at crossings, the building of bridges, viaducts, etc.; and as a further predicate for the introduction of such evidence he testified that he was familiar with the crossing in question, had taken measurements concerning the same, and had testified to the physical conditions surrounding the crossing, including the depth, length and breadth of the cut through which the railroad tracks ran at the point, and gave various elevations and other data pertaining to the crossing. We think this evidence was competent. It came clearly within the rule of law permitting expert testimony. (See Lawson on Expert & Opinion Evid., pp. 5 to 7; Elliott on Evid., vol. 2, sec. 1059; Wigmore on Evid., vol. 1, secs. 555 et seq.) This evidence was offered for the purpose of showing the impracticability of constructing a grade crossing at the place in question. The pleadings raised the issue as to whether it was practicable to construct a grade crossing over the tracks of appellant at the point in question on account of the danger to the public in operating its trains. In this character of suit, where the city is seeking by mandamus to compel appellant to put in a grade crossing, it is competent for the company to show that it is impracticable or impossible to maintain a grade crossing under the circumstances, or that it is unreasonable to so require it, on account of the existence of danger to the public at said crossing. Hence the evidence showing that it was not feasible or tending to meet the issue was relevant, and therefore admissible. (See Houston & T. C. Ry. Co. v. City of Dallas, supra.)

In the view we take of the case, we regard it unnecessary to consider the remaining assignments of error.

For the reasons indicated, we think the judgment of the court below should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*