ORIENTAL OIL CO. et al. v. CITY OF SAN ANTONIO et al.  (No. 6186.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 18, 1918. Rehearing Denied Jan. 15, 1919.)

1. INJUNCTION ⟲147 — TEMPORARY INJUNCTION—EVIDENCE.

On motion for temporary injunction by oil company to restrain city from enforcing ordinance prohibiting cutting of sidewalks to give access to filling station, evidence *held* sufficient to sustain refusal.

2. ESTOPPEL ⟲62(8)—MUNICIPAL CORPORATIONS—ESTOPPEL TO ABATE NUISANCE.

If conduct of gasoline filling station is determined, in suit between oil company and city, to be menace to pedestrians or nuisance to street traffic, city cannot be estopped to abate it by having permitted construction.

3. INJUNCTION ⟲144—TEMPORARY INJUNCTION—PLEADING—SUFFICIENCY.

Oil company, suing to restrain city from enforcing ordinance prohibiting company from cutting sidewalks to give access to filling station, and failing to allege it received written permit to make alterations in sidewalk and curbing, as required by another ordinance, *held* not entitled to temporary injunction.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by the Oriental Oil Company and another against the City of San Antonio and others. From an order refusing temporary injunction, plaintiffs appeal. Judgment affirmed.

Terrell & Terrell, of San Antonio, for appellants.

R. J. McMillan, of San Antonio, for appellees.

SWEARINGEN, J. This is an appeal from an order refusing a temporary injunction, petitioned by the appellants, the Orien-

tal Oil Company and Ed. N. Oeffinger, against the city of San Antonio, its commissioners, officers, and agents, and against Sam C. Bell, Ray Lambert, Phil. L. Wright, Andreas Coy, and Louis Heuermann individually.

The temporary injunction sought was to restrain the enforcement of the following ordinance:

"An Ordinance.

"Whereas, the Oriental Oil Company, Grover C. Cain and P. J. Cain have cut the sidewalk at the southwest corner of Travis and St. Mary's streets, on both the Travis street and St. Mary's street sides, for the purpose of permitting and inviting the ingress and egress of automobiles to and from a gasoline filling station, which they propose to establish and maintain at said point; and

"Whereas, said sidewalks have been cut without the proper permission, required by the ordinances of the city of San Antonio; and

"Whereas, said sidewalks are located in one of the busiest and most populous parts of the city and the use of same by autos will be extremely dangerous to the public and practically destroy the use of said sidewalks as such; and after a public hearing at which said parties were represented the commission has decided that such use of the sidewalks is a public nuisance: Therefore,

"Be it ordained by the commissioners of the city of San Antonio:

"Section 1. That the operation or maintenance of a gas-filling station to be reached by cars driving over, across or upon the sidewalks at the corner of Travis street and St. Mary's street as aforesaid would be and the same is hereby declared to be a menace to the public safety and a public nuisance.

"Sec. 2. That the Oriental Oil Company and the said Grover C. Cain and P. J. Cain, their servants; agents and employés, and all other persons, are hereby forbidden to establish or maintain a gas-filling station at said point, to be reached by cars driven over or upon said sidewalks or to proceed further with the work being done at that point upon said sidewalks.

"Sec. 3. The said Oriental Oil Company and the said Grover C. Cain and P. J. Cain are hereby ordered and instructed to forthwith restore said sidewalks to the condition in which same were prior to the time they were out, said restoration to be done under the supervision and direction of the city engineer, and said sidewalks in their present condition are hereby declared to be a public menace and a public nuisance. In the event said parties shall fail and refuse same forthwith, then and in that event the city engineer is directed to restore said sidewalks at the expense of the said Oriental Oil Company, Grover C. Cain and P. J. Cain.

"Sec. 4. The chief of police of the city of San Antonio and the other police officers acting under his direction, are specially instructed to enforce the provisions of this ordinance by obstructing any further work on said sidewalks, save as provided for herein, and by restraining the use of said sidewalks at this point by automobiles crossing or attempting to cross same or drive thereon.

"Sec. 5. Any person, firm or corporation, their agents or employés, violating any provisions of this ordinance or refusing to comply with any provision thereof, shall be guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than five ($5.00) dollars nor more than twenty-five ($25.00) dollars, and each separate day on which said parties shall violate said ordinance or refuse to comply therewith shall constitute a separate offense.

"Sec. 6. This ordinance, being an urgent public necessity by reason of the facts apparent upon the face thereof, and being for the immediate preservation of the public safety and welfare, and being passed by a four-fifths vote of the commissioners, shall take effect from and after its passage and approval.

"Passed and approved, this 10th day of October, A. D. 1917. ————,

"Mayor of the City of San Antonio.
"Attest: ————, City Clerk."

The cause of action is alleged as follows:

"That the plaintiff Oriental Oil Company has leased certain property in the city of San Antonio, in accordance with a lease, a copy of which is hereto attached, marked 'Exhibit A' and made a part hereof for all purposes, as fully and completely as if incorporated herein, said contract providing, among other things, for a lease by the said Oriental Oil Company of certain property at the corner of St. Mary's and Travis streets in city block 403 in the city of San Antonio, Bexar county, Tex., said property having a frontage of 62 feet on the west side of St. Mary's street and extending back 168 feet to the south side of Travis street. Said lease also provides for the erection of a building to cost $2,500 more or less, and for the payment of a monthly rental by the Oriental Oil Company to the Bancroft Building Company of $325 per month, payable in advance, the first payment becoming due on October 15, 1918. Said lease further provides that it cannot be assigned without the consent of the lessor, and many other provisions fully set out in said lease, Exhibit A.

"That said lease was executed on the 16th day of August, 1918, and shortly thereafter the Oriental Oil Company entered into a contract with Ed. N. Oeffinger for the construction of a certain building on said property to cost $3,600; that a copy of said contract is attached hereto, and marked 'Exhibit B,' and made a part hereof for all purposes, and that, among the provisions of the said contract, is an agreement by the said E. N. Oeffinger to complete said building in accordance with certain plans and specifications, a copy of which is attached hereto and made 'Exhibit C.' And to secure said contract a bond was executed, a copy of which is hereto attached, marked 'Exhibit D,' and made a part hereof for all purposes. Said contract further provides that the work shall be done in accordance with the city ordinances covering this class of work, and it further provides that the Oriental Oil Company agrees to pay to the said Ed. N. Oeffinger $3,600 on the completion of the job, on presentation of the receipted bills for labor and material entering into said building.

"Plaintiffs further represent that thereafter the Oriental Oil Company, through its proper agents, applied to the building inspector, John

L. Richter, of the city of San Antonio, for the permit for the erection of said building, and that they secured said permit on September 4, 1918, a copy of same being hereto attached, marked 'Exhibit E' and made a part hereof for all purposes.

"That thereafter M. J. Kane, a subcontractor under plaintiff Oeffinger, applied to the city engineer of the city of San Antonio, for the furnishing of grades and directions for cutting the sidewalks and curb on Travis street and also on St. Mary's street, and for the driveways for the oil-filling station, said driveways being fully shown in the plan for said building, shown and exhibited to the building inspector at the time said building permit was issued, and that in pursuance of that request an assistant to the city engineer, who was duly authorized to do so, did come to the property described herein, showed the subcontractor where to cut the sidewalk and curb on each of said streets, and did give them the grade of the sidewalk, and did tell them how to construct said driveways and entrances thereto, and told them to proceed with the work.

"That said work was done in strict accordance with said instructions, and proceeded toward completion until October 6, 1918, when Phil. L. Wright, one of the defendants herein, acting under his own initiative, or under instructions from the mayor, appeared at the side of the building, stopped all work, and threatened to put in jail any one doing any further work on this property of any kind or character, with reference to the use of the driveways and contemplated construction of the sidewalks and curbs.

"Plaintiff Ed. N. Oeffinger represents that he is unable to complete the driveways provided for in the contract because the city of San Antonio, through its mayor, Sam C. Bell, and its commissioner of fire and police, Phil. L. Wright, has stated to the said M. J. Cain, subcontractor, and to the agents of the Oriental Oil Company, that if they continue with the work, and if they do not restore the sidewalk and curb as it was prior to the time it was changed, they will have all of them arrested and prosecute them for a violation of some of the city ordinances.

"Plaintiffs further represent that the city of San Antonio, through its building inspector, knew that the driveways, as shown by said map attached hereto, and marked 'Exhibit F' were to be placed as now partially constructed, and that same was known to many of the officials of the city of San Antonio, including the mayor of the city, chief of the fire department, and the fire and police commissioner, Phil. L. Wright.

"That more than one week before the said work was stopped on said building, and while it was under construction, the mayor and Fire Chief Goetz appeared on said property and instructed these plaintiffs to change the location of the gasoline tank that was to be placed underground. That thereafter the mayor of the city of San Antonio and Phil. L. Wright, commissioner of fire and police, appeared on said property, on or about October 4, 1918, and instructed these plaintiffs to again change the location of the gasoline tank which was to be placed underground, and that on each and all of these occasions the pipes for delivery of gas-

oline were in place, the sidewalks had been cut, and it was plainly apparent to them and each of them that these plaintiffs intended constructing the driveways into the property from Travis street and out on St. Mary's street in direct accordance with the plans theretofore exhibited to the city building inspector, and that during all that time the plaintiffs were erecting and having erected the improvements on said property now partially finished, costing about $3,600, several hundred dollars of which was erected after the mayor and fire chief had visited the property, and probably $200 after the visit of the said Sam C. Bell and Phil. Wright, on or about October 4, 1918, and that all of the money was spent except a small part to finish the building after the building inspector had, with full knowledge of the plans, issued a permit for said building.

"Plaintiffs further represent that, on or about October 6, 1918, certain parties owning property on St. Mary's street violently protested with the mayor and commissioner against the building of driveways and the change in the sidewalks. Plaintiffs are informed and believe that all of said protesting property owners know, or could have known by the use of ordinary care, that the said building was being erected for the purpose of selling oil and gas to parties coming to same and desiring to purchase. * * *

"Plaintiffs represent that the said driveways were constructed in accordance with the ordinances of the city of San Antonio and in accordance with the instructions of the engineering department thereof, acting through an assistant city engineer, and that, in the event plaintiff Ed. N. Oeffinger is not allowed to complete the said driveway in accordance with the plans and specifications and in accordance with his contract, the plaintiff, Oriental Oil Company, will suffer irreparable damage, in that it cannot use the said premises for which they have agreed to pay, for a period of five years, the sum of $325 per month, and will lose the entire value of their improvements of approximately $4,000, same representing the building and other amounts already expended thereon in the event it is required to pay the said contractor, and that these plaintiffs are without an adequate or complete remedy at law.

"Plaintiffs further represent that the action of the city of San Antonio, its commission and officials, deprives them of their property without due process of law. Plaintiffs further represent that the cities all over this land, and especially cities of the size of San Antonio and larger, have gasoline filling stations, as shown by the plat attached hereto, and they have been operated without injury to the public in any shape or form, and that the same are convenient and practical for the public to deal with the plaintiff Oriental Oil Company, and that such cities as Dallas, Ft. Worth, Houston, St. Louis, New York City, and many other cities have similar stations in the business section, and these plaintiffs believe and represent that such a station as is being built and almost completed by the plaintiffs herein is the best means of selling gasoline and oils to the owners of automobiles, in that they do not block the streets, interfere with traffic, nor injure the pavements by dropping oil thereon. Petitioners represent that there are other such stations in the city of

San Antonio, and in fact many have been operated here for several years, and only recently the city of San Antonio, acting through its mayor and commission, has authorized another company to install a similar station on Avenue C, and about one year ago another was installed on Travis street just one block from the location of the one being constructed by the plaintiff Oriental Oil Company, and that there are many throughout the city, and that this fact is well known to the city officials of the city of San Antonio and to the commission, and that they have been recognized as such. That during May, 1918, the city of San Antonio passed an ordinance, prohibiting any one from driving into the stations except for the purpose of purchasing and procuring the delivery of gasoline and oils and other supplies to said stations.

"Plaintiffs further represent that, by reason of the permit issued by the building inspector, by reason of the knowledge on the part of the officials mentioned herein, the work was progressing and money was being expended, and by reason of the fact that the grades were given and places properly pointed out for cutting the sidewalks and curbs, and directions given for the installation of new sidewalks, and by reason of the fact that the full plan of the said building and its full operation was known to said city officials, as shown above, the said city of San Antonio and other defendants herein are estopped, and should be estopped, from interfering with these plaintiffs in the completion of said building, driveways, curbs, and sidewalks, and the operation of same as an oil and gasoline station, as hereinbefore set out.

"Plaintiffs further represent that on October 10, 1918, and after the mayor and the city attorney had been informed that an injunction suit would be filed by the plaintiffs, the city commission passed an ordinance, a copy of which is hereto attached and marked 'Exhibit G,' which ordinance was passed without any notice of any kind or character to these plaintiffs, and these plaintiffs say that the same is invalid, in that it seeks to deprive these plaintiffs of their property without due process of law."

The appellees in defense relied upon the ordinance copied above, and in justification of the ordinance alleged that the city of San Antonio has, by virtue of its charter, vested in it the absolute regulation and control of the streets and sidewalks within the city for the welfare and safety of traffic and pedestrians, and alleged that the business of operating a gasoline filling station on the property described in appellants' petition was a public menace and a nuisance for five reasons. The reasons alleged are:

(1) That the gas-filling station invited the public to drive motor driven vehicles across the sidewalks on St. Mary's and Travis streets abutting the property described, for ingress and egress to and from the station, thus effectively converting the sidewalks into street uses by the public, thereby blocking the traffic on the streets and endangering the pedestrians on the sidewalk.

(2) That the appellants changed the construction of the sidewalks abutting their property in such manner as to make them dangerously slippery with rain and grease.

(3) That the driveway across the said sidewalks was beyond control of the traffic officer directing traffic at the intersection of the two said streets.

(4) That the said driveway over the sidewalks would cause violations of the ordinance prohibiting turning on streets except at street intersections.

(5) And lastly, repeating, in different terms, the first of the five reasons above mentioned, alleged that, to use appellant's said driveway, the public would either move too slowly and thereby block the street traffic or move too quickly and thereby endanger the sidewalk pedestrians.

The answer further alleged facts showing the volume of traffic on the two streets, alleged the general widening of streets in San Antonio, and alleged the expense paid by the city and property owners for such improvements; the answer closing with the allegation that appellants had not obtained a written and signed permit to cut the curbs or sidewalks abutting their said property, as required by city ordinance.

There is little, if any, conflict in the facts testified to in support of the pleadings. The issue is drawn by opposite deductions from the same facts in evidence. For instance, there is no dispute about the congestion of traffic at the intersection of Travis and St. Mary's street, nor about the construction of the driveway, sidewalks, and curbs, but appellees deduce from these uncontroverted facts that traffic will be blocked and pedestrians endangered, while appellants deduce from these same facts that the congestion will be relieved and traffic benefited. We, therefore, will make no detailed statement of the evidence except in the discussion of the issues that may appear to us.

There seem to be but two issues presented. The first is the one given above for an illustration, wherein appellees contend, as stated in the attacked ordinance, that the business as contemplated will constitute a menace and a nuisance, and wherein appellants insist that it is not a menace, but rather a benefit. It is obviously the contention of appellees that the business is a nuisance because its conduct is a menace to pedestrians, or blocks street traffic, and we may confine our discussion to the question whether or not the conduct of the gas-filling station business is a menace to pedestrians, or an inconvenience to street traffic. The discussion is further limited by the fact that the only menace claimed by appellees is that caused by inviting the public to drive motor vehicles across the sidewalks and that caused by the construction and location of the sidewalks and driveways.

It is conceded by counsel for appellees in their memoranda of authorities, as shown by the following quotation, that the ordinance attacked is insufficient to constitute the business a menace if in fact it was not, and that the question is one of fact that may be determined by the courts:

"All of appellant's authorities finally come back to the proposition that if the matter complained of is a nuisance, it can be abated, but that the simple declaration it is a nuisance by ordinance does not constitute it so.' We recognize that principle. It is firmly established by the case of Yates v. Milwaukee [10 Wall. 497, 19 L. Ed. 984], decided by the Supreme Court of the United States, and the city has never contended the contrary."

This admission is supported by the following authorities: Pye v. Peterson, 45 Tex. 312, 23 Am. Rep. 608; G., C. & S. F. Ry. v. Belton, 57 Tex. Civ. App. 460, 122 S. W. 413; Evansville v. Miller, 146 Ind. 613, 45 N. E. 1054, 38 L. R. A. 161; People ex rel. Reime v. Blocki, 206 Ill. 363, 67 N. E. 812; 19 R. C. L. p. 817, § 122; McQuillin on Municipal Corp. §§ 899–902; Joyce on Nuisances, §§ 322–335.

That a property owner has the inherent right to drive over the sidewalks for ingress and egress with vehicles for his private use and for the conduct of his business, provided the use thus made of the sidewalks is reasonable, is expressly eliminated by the decree appealed from. To such an issue the following authorities are pertinent: Tolman v. Chicago, 240 Ill. 268, 88 N. E. 488, 24 L. R. A. (N. S.) 97, 16 Ann. Cas. 142; Joyce on Nuisances, § 226; Zimmerman v. Railway, 154 Mo. App. 296, 134 S. W. 40; Standpoint v. Doyle, 14 Idaho, 749, 95 Pac. 945, 17 L. R. A. (N. S.) 497; Tire Co. v. Commissioner, 163 Mich. 249, 128 N. W. 410, 30 L. R. A. (N. S.) 1074; Crawford v. Marion, 154 N. C. 73, 69 S. E. 763, 35 L. R. A. (N. S.) 193; Thompson v. Boston, 212 Mass. 211, 98 N. E. 700; Laundry v. Louisville, 168 Ky. 499, 182 S. W. 645; Bowers v. Machir, 191 S. W. 758.

The pleadings raise the issue whether the city is authorized to prohibit and prevent the use of the sidewalks in the conduct of the business. The principal, if not controlling, objections are those detailed in the first and fifth reasons alleged by appellees and above mentioned, namely, that the public use of sidewalks by vehicles blocks traffic in the street and endangers pedestrians on the sidewalks. The conclusion that street traffic will be blocked is not clear. The congestion at the intersection is due, primarily, to currents of traffic passing each other at right angles, and, secondarily, by all the traffic of both streets concentrating upon one-half of the space open for use before the intersection square is reached, if both intersecting streets are the same width, as in the present case. All vehicles that turn out of Travis street before reaching the congested spot relieve the crowded area, avoiding or being avoided by a right angle current of traffic using an otherwise unused space. It does not necessarily follow that to turn out of Travis street delays the current; on the contrary, it may hasten it by removing from it—moving out can be effected as quickly as moving forward. On the other hand, the conclusion that driving autos across the sidewalks will increase the hazard to pedestrians on those sidewalks is unquestionably true.

Whether this increased hazard to pedestrians is of sufficient importance to warrant the practical destruction of appellant's property in the interest of public welfare is ultimately to be determined by a trial upon the merits of this case. As presented to us now, the ordinance itself is not sufficient to satisfactorily establish that fact, but there is evidence to sustain the trial court's judgment.

The three other reasons for which it is alleged the gasoline filling station is a menace are of doubtful merit. The charge that the sidewalk will be hazardous when wet because the sidewalk is not level is not sustained by the evidence. The city engineer testified without contradiction that the sidewalk was four feet wide and level, except for the usual sidewalk drop of one-fourth of an inch. The similar charge that the sidewalk would be dangerous because of grease is met by the fact that the only testimony in the record concerning the allegations is that there would be no grease on the sidewalk.

The further charge, alleging that the traffic officer could not control traffic turning out of Travis street into the driveway, loses its force from the fact that there is no reason or necessity for the traffic officer controlling the traffic that does not use the congested area, which alone he is to regulate.

[1] The charge that the maintenance of the driveways would cause violations of the ordinance prohibiting turning in streets between intersections, and then only by keeping to the driver's right, is without force. Appellant's driveway can neither repeal that traffic ordinance nor prevent its enforcement. Moreover, appellant's uncontradicted testimony is that the driveway could only be used by ingress from Travis and egress to St. Mary's. There is sufficient evidence to sustain the trial court's refusal of the temporary injunction, thus holding the situation in statu quo until a final trial.

[2] If the conduct of the business is determined to be a menace to pedestrians or a nuisance to street traffic, the city cannot be estopped to abate it. Belton v. Baylor Female College, 33 S. W. 680; Belton v. Central Hotel Co., 33 S. W. 297; City of

Llano v. County of Llano, 5 Tex. Civ. App. 132, 23 S. W. 1008.

[3] The second issue joined is that appellants received no written permit for making alterations in the sidewalk and curbing as required by ordinance.

That the permit was not in writing and signed is admitted by appellants, but they insist that oral permission was expressly given, that the writing was deferred at the request of the city engineer for his convenience. This contention is proven by the undisputed testimony of the city engineer as well as the testimony of Oeffinger, one of the appellants.

There is a valid city ordinance regulating the altering and building of sidewalks and curbs which requires a written and signed permit. This was not obtained by appellant. The well-known rule so often cited:

"The rule with regard to the pleading in injunction suits is well established as follows: 'The rule of pleading that the statements of a party are to be taken most strongly against him is reinforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief.' Gillis v. Rosenheimer, 64 Tex. 246; Cotulla v. Burswell, 22 Tex. Civ. App. 329, 54 S. W. 614; City of Paris v. Sturgeon, 50 Tex. Civ. App. 522, 110 S. W. 459; 10 Ency. Plead. & Prac. pp. 923–927."

There was no error in refusing the temporary injunction restraining the city, and thereby permitting appellants to alter the sidewalks and curbs.

The judgment is affirmed.