Argued January 22, reversed and remanded with directions February 9, 1926.

# W. A. BARRETT ET AL. *v.* UNION BRIDGE COMPANY.

### (243 Pac. 93.)

**Eminent Domain—Construction of Bridge Approach in Street Held not "Taking" Within Constitutional Provisions.**

1. That bridge company, acting under contract with the state highway department, builds a bridge approach within the confines of a street, so as to interfere with access to and from abutting property, is not a "taking," within Constitution, Article I, Section 18, nor within the provisions of the federal Constitution, requiring compensation.

**Eminent Domain—Statute Held not to Authorize Compensation for Property Damaged, but not Taken.**

2. Sections 3196, 4561, 4562, 4718, 4719, Or. L., do not make provision for making compensation for property damaged, but not taken, and hence furnish no authority for payment of damages to an abutting owner whose property was injured by construction of a bridge approach within the confines of the street.

**Bridges—State Highway Commission Held not Without Power to Construct Inter-county Bridge.**

3. Sections 4718, 4719, Or. L., when considered in connection with the act creating and defining the powers of the state highway com-

----

1. What constitutes taking of property for public use, see note in 16 **Am. St. Rep.** 610.

Grading or changing grade of street as taking of property, see note in 26 **Am. Rep.** 457.

Consequential damage to property from proper exercise of governmental powers as taking for public use, see note in 4 **Ann. Cas.** 1185. See, also, 10 **R. C. L.** 61, 171.

mission, do not deprive the commission of authority to construct an inter-county bridge.

---

Bridges, 9 **C. J.**, p. 425, n. 43 New.
Eminent Domain, 20 **C. J.**, p. 643, n. 84, p. 657, n. 57, p. 658, n. 59, p. 669, n. 17, p. 671, n. 18, p. 692, n. 51 New, 55, p. 835, n. 58, p. 1170, n. 75.
Injunctions, 32 **C. J.**, p. 73, n. 60.
Municipal Corporations, 28 **Cyc.**, p. 857, n. 70, p. 859, n. 77, p. 863, n. 24.

From Linn: L. H. MCMAHAN, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the name of *Messrs. Winter & Maguire,* with an oral argument by *Mr. J. P. Winter* and *Mr. J. M. Devers.*

For respondents there was a brief over the names of *Messrs. Malarkey, Seabrook & Dibble* and *Messrs. Hill & Marks,* with oral arguments by *Mr. E. B. Seabrook* and *Mr. Gale S. Hill.*

RAND, J.—This suit is instituted to restrain the Union Bridge Company, as sole defendant, from constructing or maintaining an approach to a public bridge, on a public street, in front of plaintiff's premises in the City of Albany. The bridge spans the Willamette River at Albany, and is a part of what was designated and constructed by the State Highway Commission as a state highway between Albany and Corvallis. Plaintiffs, not having filed an undertaking therefor, failed to obtain an injunction restraining the construction of the approach, and the same, together with the bridge of which it is a necessary and essential part, has been substantially completed at great public cost and expense, partly before, but mainly since the commencement of the suit.

The moneys used in the construction of the bridge were furnished and advanced by the State Highway Commission, the City of Albany and the County of Linn, under an understanding and agreement entered into by them for said purpose. The defendant, in the construction of the bridge and the approaches thereto, was a public contractor, who had undertaken to construct and complete the same in accordance with certain plans and specifications prepared by the State Highway Commission. Plaintiffs' premises are situate within the corporate limits of the City of Albany, and close to the river bank, and have a frontage of 102 feet on Ellsworth Street, and of 134 feet on Water Street. On these premises, plaintiffs have a two-story concrete building, fronting on both of said streets, which building was constructed in conformity to the then established grade of said streets, for garage purposes, and has ever since been used by plaintiffs for said purposes. The approach is wholly constructed on Ellsworth Street, and as constructed has an elevation in front of plaintiffs' premises above the grade formerly established on said street, of eight feet at its lowest point, and seventeen feet at its highest point, and completely prevents all access by automobiles from Ellsworth Street to and from plaintiffs' garage. The case is here upon an appeal by defendant from a decree given upon the final hearing of the cause, perpetually enjoining the defendant from completing the construction of the approach, and from maintaining the same in front of plaintiffs' premises.

1. In support of the decree, plaintiffs contend that their being deprived of their right to the use of Ellsworth Street as a means of ingress and egress to and from their property, through the construction and

maintenance of the approach, amounts to a taking of
their property without compensation, and therefore
violates the provisions of both the state and federal
Constitutions, and entitles them not only to the in-
junction prayed for, but to have the structure re-
moved as a common nuisance. The Constitution of
this state provides that private property shall not be
taken for public use, without just compensation; nor,
except in case of the state, without such compensation
being first assessed and tendered: Art I, § 18. The
word "damaged" is not used. The improvement
complained of is entirely within the confines of the
street. There has been no invasion of plaintiffs'
property in any physical sense; both the title and
possession remain undisturbed. That the owner of
property abutting on a public street has a right of
access to and from his property by way of the street,
and that this right is as much property as the land
adjacent to the street, is unquestioned. Streets are
established to afford access, light and air to the prop-
erty through which they pass, and the right to access,
light and air is appurtenant to the property adjacent
to the street, and is a part and parcel of it. Any
invasion or interference with this right by a private
individual, or by any private interest, even if done
with the consent of the city, or the legislature, is a
taking of the property, for which compensation must
be made. But the right of the abutting property
owner is subject to the rights of the public to use the
street for highway purposes. The law on this sub-
ject is stated in 1 Lewis on Eminent Domain (3 ed.),
Section 120, as follows:

"Numerous cases decided since the first edition of
this work, established beyond question the existence
of these rights, or easements, of light, air and access,
as appurtenant to abutting lots, and that they are as

much property as the lots themselves. But as all streets are established primarily for the public use and general good, the right of the public is paramount to the right of the individual. And so the private rights of access, light and air are held and enjoyed subject to the paramount right of the public to use and improve the street for the purposes of a highway. And as these private rights are thus subject to the right of the public to use and improve as a highway, it follows that, when such uses or improvements are made, no private right is interfered with and consequently no private property is taken. It follows also that, as these private rights are subject only to the use and improvement of the street by the public for the purpose of a highway, an interference with these rights by the use or improvement of the street for any other purpose or by any other agency, under legislative authority, is a taking of private property to the extent of such interference.''

In many respects, the facts in this case are very similar to those in *Brand* v. *Multnomah County*, 38 Or. 79 (60 Pac. 390, 62 Pac. 209, 84 Am. St. Rep. 772, 50 L. R. A. 389). In that case an approach to the Madison Street Bridge in the City of Portland had been or was being constructed, which when completed would cut off and destroy plaintiff's right of ingress and egress to and from that portion of his property abutting on Madison Street, and all access to that portion facing the Willamette River. One of the principal cases relied upon by the court for its decision in that case was *Willis* v. *Winona City*, 59 Minn. 27 (60 N. W. 814, 26 L. R. A. 142), where an approach for a bridge across the Mississippi River ''extended a considerable distance along the center of one of the streets of the city, and passed the plaintiff's property,'' a similar state of facts to that existing in the Brand case. In *Brand* v. *Multnomah County* this court held that no liability attaches to a

municipality "for consequential damages resulting from the fixing or establishing of a street grade, unless specially required to respond by some constitutional, statutory or charter provision," and that the acts complained of was not a taking, within the meaning of Article 1, Section 18, of the state Constitution. In deciding that case, this court quoted with approval the holding of Mr. Justice MITCHELL in *Willis* v. *Winona City, supra,* that "so long as there is no application of the street to purposes other than those of a highway, any establishment or change of grade made lawfully, and not negligently performed, does not impose an additional servitude upon the street, and hence is not within the constitutional inhibition against taking private property without compensation, and is not the basis for an action for damages unless there be an express statute to that effect."

Nor do the facts in this case bring it within the inhibition of the federal Constitution. In *Chicago* v. *Taylor,* 125 U. S. 161 (31 L. Ed. 638, 8 Sup. Ct. Rep. 820, see, also, Rose's U. S. Notes), the Supreme Court of the United States said:

"This court—in *Transportation Co.* v. *Chicago,* 99 U. S. 635, 641 (25 L. Ed. 336)—held that in making the improvement of which the plaintiff complained the city was the agent of the State, performing a public duty imposed by the legislature; and that 'persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction, and with care and skill, is a doctrine almost universally accepted, alike in England and in this country,'—citing numerous cases, among others *Smith* v. *Corporation of Washington,* 20 How. 135 (15 L. Ed. 858). 'The decisions to which we have referred,' the court continued, 'were made in view of Magna Charta, and the restriction to be found in the constitution of every

117 Or.—15

State, that private property shall not be taken for public use without just compensation being made. But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action.' This view, the court further said, was not in conflict with the doctrine announced in *Pumpelly* v. *Green Bay Co.*, 13 Wall. 168 (20 L. Ed. 557), which was a case of the permanent flooding of private property, a physical invasion of the real estate of the private owner, a practical ouster of his possession.''

In this suit the Union Bridge Company is made the sole defendant. Neither the County of Linn, the City of Albany nor the State Highway Commission were made parties defendant. While engaged in constructing this approach, the defendant company was acting under a contract with the State Highway Commission, and it in turn was acting under a contract with the County of Linn and the City of Albany. So far as the defendant company acted in accordance with the provisions of its contract, it not being charged with negligence in the construction, or with having acted beyond the terms of its contract, it is no more liable to suit, or answerable for damages, than the Highway Commission itself would have been had it performed the work. Whatever the State Highway Commission could itself lawfully do in the construction or improvement of a State highway, it could lawfully contract with another to do.

2. Plaintiffs contend that while the Constitution only requires that compensation shall be made for private property when taken for public use, it is

within the power of the legislature to provide for making compensation for property damaged, but not taken, and that such provision was made by Sections 3196, 4561, 4562, 4718 and 4719, Or. L. While it is obvious that the legislature does have such power, we think that no such provision has been enacted, either in the sections referred to or in any other act of the legislature. Section 3196 is a mere grant of power, authorizing any county in constructing a bridge located wholly, or in part, within the limits of an incorporated city, to use such part of any street as may be necessary for use as an approach to the bridge, and gives such county control over the part thus used. It has no application to this particular question. Neither do Sections 4718 nor 4719. Sections 4561 and 4562 are a part of Chapter 295, Laws 1917. When these two sections are carefully read in connection with the remainder of the act, and are considered in their relation to the history of road legislation in this state, of which the act itself is in part a re-enactment, we think it will be found that the legislature has not provided for the payment of compensation for damages caused to property not included within the limits of a highway, unless in addition to the construction of the highway, there has been some physical invasion of the property itself, such as that provided for and authorized by Section 4561, namely, "diverting water or watercourses, or draining swamps, marshes, tide-land, tide-flats, or ponds, or filling the same." For damages resulting from acts of that nature on private property adjacent to a public highway, not done with the consent of the owner, compensation must be made, for otherwise there would be a taking without just compensation, in violation of both the state and federal Constitutions.

But for the acts complained of, there is nothing in the statute indicating an intention upon the part of the legislature to create any liability. Such an intention is not expressly declared in the act, nor can it even be inferred if such would be sufficient by anything contained therein.

It is alleged in the answer among other things that:

"That prior to the awarding of a contract for the construction of said bridge, the State Highway Commission, the County of Linn, through its County Court, and the City of Albany, through its City Council, entered into a written agreement, wherein and whereby the State Highway Commission was requested and authorized to construct the said bridge at the said proposed site, and in accordance with plans and specifications prepared by the State Highway Commission, and it was further agreed and provided in said contract that the City of Albany should pay toward the cost of said structure, THIRTY-FIVE THOUSAND ($35,000.00) DOLLARS, which said sum of money was to be procured by the sale of the bonds of the City of Albany, which said bonds were voted and authorized by the legal voters of said City, and it was further provided, that the County of Linn should contribute toward the cost of said structure, ONE HUNDRED TWELVE THOUSAND FIVE HUNDRED ($112,500.00) DOLLARS, which funds were to be procured by the sale of county road bonds, which bonds were voted and authorized by the legal voters of said county; that said agreements between said County of Linn, the City of Albany, and the State of Oregon, through its State Highway Commission, was in writing, and was subscribed by the members of the State Highway Commission, the County Judge and County Commissioners, representing Linn County, and by the Mayor and Recorder, representing the City of Albany."

3. Upon the filing of this answer, and without the filing of a reply, the cause was disposed of on plain-

tiff's motion for judgment on the pleadings, consisting of the complaint and answer only. The truth of the facts thus alleged is, therefore, admitted, but it is contended that under Sections 4718 and 4719, the bridge in question being an inter-county bridge, the State Highway Commission had no authority to contract for its construction, and that under Section 4225, Or. L., the approach being on a city street, the State Highway Commission was likewise without authority to authorize its construction. We are unwilling to give to the statute creating the State Highway Commission and defining its duties the narrow construction contended for.

Sections 4718 and 4719 authorize and provide a mode whereby two counties acting jointly, or one of such counties, if the other refuses to join, may construct a bridge over any stream which forms the boundary line between such counties. It is contended that this is a special specific authorization which confers upon the County Courts of such counties the exclusive power to build an inter-county bridge, and that the general provisions defining the powers and duties of the State Highway Commission vests no power in the Commission to construct an inter-county bridge. This is equivalent to saying, that although the State Highway Commission is vested with the power to designate and construct state highways, without regard to county lines, it must stop such construction at every stream which forms a boundary between two counties, unless such counties, or one of them, consent to build a bridge over such stream. There is no provision of law by which the County Courts of such counties could be coerced or compelled to consent to build such bridge, and if the construction contended for is correct, the State Highway Commis-

sion would be stripped of one of its most essential powers. We think that a careful study of the act creating and defining the powers of the State Highway Commission will disclose that no such lack of power on the part of the State Highway Commission exists, in cases where the bridge is on a state highway which has been designated as such by the legislature, or by the commission itself, pursuant to legislative authority. But we do not deem this question of any importance here, for two reasons; first, under the averments of the answer, the County Court of Linn County authorized the construction of the bridge in question, and, second, because the bridge has been already practically completed, at great cost and expense to the public, and if there has been any illegality in the construction for want of power, or because of an improper delegation of power, it can avail the plaintiffs nothing. The bridge itself is a public bridge, built at public expense, for public use. The expenses of construction have been borne principally by Linn County and in part by the City of Albany. Whether the amounts authorized to be expended by the county and city were sufficient to bear the entire cost of construction is not disclosed. If there was a deficiency, that deficiency has been or will be borne by the State Highway Commission. Between the three, the power clearly existed to construct the bridge, and if the procedure followed was irregular, plaintiffs, as taxpayers of the City of Albany and of the County of Linn, could have had the matter judicially determined before the expenditure of said moneys. Having failed to do so, it is now too late for them to complain.

For these reasons, the decree of the lower court must be reversed, and the cause will be remanded,

with directions to dismiss the suit, but without costs to either party upon this appeal.

REVERSED AND REMANDED WITH DIRECTIONS.

BELT, J., did not sit in this case.