# CITY OF SAN ANTONIO V. PIGEONHOLE PARKING OF TEXAS, INCORPORATED

No. A-6339. Decided February 26, 1958.
Rehearing overruled April 9, 1958.
(311 S.W. 2d Series 218)

*Carlos C. Cadena,* City Attorney, and *A. W. Worthy,* Assistant City Attorney, both of San Antonio, for petitioner.

The Court of Civil Appeals erred in holding that the city's ordinance prohibiting issuance of curb cut and driveway permits on portions of West Houston and Commerce streets is void as taking of respondent's property without due process and without just compensation. Gulf Refining Co. v. City of Dallas, 10 S.W. 2d 151; Oriental Oil Co. v. City of San Antonio, 208 S.W. 177; Adams v. Grapotte, 69 S.W. 2d 460, Id. 130 Texas 587, 111 S.W. 2d 690.

*Harvey L. Hardy, Rosson & McGowan* and *Frank M. Rosson,* all of San Antonio, for respondents.

The right of access of an abutting property owner is a property right, and a city ordinance flatly prohibiting the issue of permits which would make such access possible, is an unconstitutional taking of said property rights. Goodfellow Tire Co. v. Commissioner of Parks and Boulevards, 163 Mich. 249, 128 N.W. 410; State ex. rel Gebelin v. Department of Highway, 200 La. 409, 8 So. 2d 71; Gulf Refining Co. v. City of Dallas, 10 S.W. 2d 151.

MR. JUSTICE CULVER delivered the opinion of the Court.

The respondent sought a writ of mandamus against the petitioner, City of San Antonio, to compel the issuance of a permit for a curb cut and the construction of driveway for vehicular traffic across the sidewalk on Houston Street to its property located on the corner of Soledad and Houston in the City of San

Antonio. The granting of the writ by the trial court was affirmed by the Court of Civil Appeals. 300 S.W. 2d 328.

Respondent had constructed a 10-story parking garage on its corner lot. The City had granted a permit for an 89 foot driveway across the sidewalk on Soledad Street. In January of 1956 the City denied a permit for a curb cut and driveway across the sidewalk on Houston Street. In the following month the City Council enacted an ordinance providing that: "No permit shall be issued for construction of any curb cut or driveway leading onto those portions of Commerce and Houston Streets which lie between Main Avenue and Alamo Street." This suit was filed subsequently to the passage of the ordinance. The parties have stipulated that the action be considered in all respects as though filed prior to the enactment of the ordinance quoted above. However, we consider this stipulation to have no material effect one way or the other.

The Court of Civil Appeals based its affirmance solely upon the proposition that:

"Appellee's right of access as an abutter is a property right and appellant's ordinance flatly prohibiting the issuance of permits which would make such access possible is an unconstitutional taking of said property right."

■ Undoubtedly the general rule is that access to a public highway is an incident to ownership of land abutting thereon and the corollary follows that this right cannot be taken or destroyed for public purposes without adequate compensation being given therefor. Adams v. Grapotte, Tex. Civ. App., 69 S.W. 2d 460; Powell v. Houston & T. C. R. Co., 104 Texas 219, 135 S.W. 1153, 46 L.R.A., N.S., 1615. While this rule is universally followed where the power of eminent domain is exercised, it does not apply when a municipality invokes its police power for the protection of the health, safety and general welfare of its citizens.

Lombard v. City of Dallas, 124 Texas 1, 73 S.W. 2d 475, 478, in upholding the constitutionality of zoning ordinances, approved the following rule of law:

"All property is held subject to the valid exercises of the police power; nor are regulations unconstitutional merely because they operate as a restraint upon private rights of person or property or will result in loss to individuals. The infliction of such loss is not a deprivation of property without due process of

law; the exertion of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law. Moreover, police regulations do not constitute a taking of property under the right of eminent domain; and compensation is not required to be made for such loss as is occasioned by the proper exercise of the police power. * * *"

The problem we deal with here, whether the abutter has the absolute right to cross the sidewalk with his driveway, irrespective of any other facts and considerations, is one on which authorities do not agree, though our search has revealed no controlling Texas decision.

The lack of uniformity among the authorities seems to be no less apparent now than it was in 1906 when it was observed in Sauer v. City of New York, 206 U.S. 536, 27 Sup. Ct. 686, 690, 51 L. Ed. 1176, that:

"* * * The right of an owner of land abutting on public highways has been a fruitful source of litigation in the courts of all of the states, and the decisions have been conflicting, and often in the same state irreconcilable in principle. The courts have modified or overruled their own decisions, and each state has in the end fixed and limited, by legislation or judicial decision, the rights of abutting owners in accordance with its own view of the law and public policy. * * * "

The respondent concedes to the City the right of regulation under its police power but contends that this right stops short of complete prohibition. We will discuss the cases upon which respondent principally relies. Some of them, though not all, are to be distinguished from the facts and circumstances of our case, so that aside from a general statement of the law they would have little application. For example, in Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, 286 Pac. 353, the court held that access to a public way across the sidewalk is a vested right of which the owner cannot be deprived without compensation, but went further and struck down the ordinance on the ground that it was discriminatory.

The land involved in State ex rel Gebelin v. Department of Highways, 200 La. 409, 8 So. 2d 71, lay outside the city limits. The plaintiff owned two tracts on opposite sides of the highway fronting 1800 and 1000 feet respectively. He proposed to subdivide into 29 lots on the north and 16 on the south. While the plaintiff contended for an access to the highway from each

lot he asked only for six entries on the north and four on the south. The points of entry were allowed as prayed for, the court pointing out that the six connections on the north would be approximately 300 feet apart and the four on the south 270 feet apart, saying that if the owner has free and convenient access to his property he has no cause of complaint. Implicit is the conclusion that the Court would not have held each subsequent lot purchaser entitled to direct access to the highway merely because his lot abutted on the highway. Goodfellow Tire Co. v. Commissioner of Parks and Boulevards, 163 Mich. 249, 128 N.W. 410, 30 L.R.A., N.S., 1074, construed a legislative act creating the Board of Commissioners as not empowering the Board to deny the permit.

In Royal Transit Co. v. Village of West Milwaukee, 266 Wis. 271, 63 N.W. 2d 62, it appears that the decision was based upon statutory grounds. The issue was resolved by a determination of whether or not the property abutted on the street within the meaning of the statute.

This is not to say that other of the authorities cited by respondent notably Anzalone v. Metropolitan District Commission, 257 Mass. 32, 153 N. E. 325, 47 A.L.R. 897; Howell v. Board of Commissioners, 169 Ga. 74, 149 S.E. 779; Brownlow v. O'Donoghue Bros., Inc., 51 App. D. C. 114, 276 Fed. 636, 22 A.L.R 939, and Newman v. Mayor of City of Newport, 73 R.I. 385, 57 A. 2d 173 can be disposed of in that fashion. They generally support respondent in his contention that the municipality can regulate but not prohibit. In Howell v. Board of Commissioners, supra, the Court having under consideration the validity of a similar ordinance said:

"This easement of access is a property right, of which the landowner cannot be deprived, upon the ground that the safety of the public traveling upon the highway may be endangered by the exercise of this easement by the abutting landowner, without just and adequate compensation being first paid to the owner. * * *."

and held that the owner of the corner lot and the filling station thereon was entitled to access for motor vehicles over the sidewalks on both streets.

On the other hand there are authorities that reflect a contrary view and would uphold the ordinance as a valid exercise by the City of its police power. This view we adopt.

In Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N.W. 2d 244 (1946), the refusal by the City Council to grant application for driveway over the sidewalk to serve a private business was held to be a proper exercise of the police power and not a denial of due process where the regulation had a substantial relation to public safety. The decision is based in part upon the rule that an abutting owner may not appropriate a part of the street for the purpose of his own private business. The Court reasons that this is just what the plaintiff was there attempting to do in seeking to construct a driveway for vehicular traffic over the public sidewalk. The Court observes: "* * * there is very little force in the argument that a regulation which in the interest of the public safety prohibits the construction and maintenance over a public sidewalk of a vehicular driveway for the use of a private business, is an unreasonable and unlawful exercise of the police power and a denial of due process." In that case the majority opinion and the dissent ably present the conflicting views and discuss many of the authorities cited by the parties here.

In Breinig v. County of Allegheny, 332 Pa. 494, 2 Atl. 2d 842, 847, while recognizing expressly the general rule contended for by respondent that the abutting owner has the right of access to his property, and that the right cannot be taken from him without compensation, nevertheless, the Court holds that, "in highly congested areas, the right of vehicular access to property abutting the highway may be reduced to a minimum and be so limited as to exclude the right to maintain driveways immediately fronting the property, where it is possible to locate them elsewhere, * * *."

The same court earlier in Farmers-Kissinger Market House Co., Inc. v. Reading et al, 310 Pa. 493, 165 Atl. 398, 401, concluded that an ordinance forbidding the use of a congested sidewalk for vehicular traffic was a proper and reasonable exercise of the City's police power. The facts and holdings in this case are quite pertinent, so much so that we quote:

"That plaintiff has the right of egress from its property to Penn Street and the right of ingress from Penn Street to its property is not disputed. That the public has the right to the reasonably unhindered use of Penn Street and the sidewalks in front of plaintiff's property is equally indubitable. But plaintiff proposes to exercise its right of ingress and egress to and from Penn Street in such a manner and to such an extent that hundreds of the automobiles of its patrons will pass daily from

its market and garage directly to Penn Street and from Penn Street directly to its market and garage. This will involve substantial interference with the extensive west-bound and east-bound motor and street car traffic on Penn Street in the block in front of plaintiff's property, and substantial interference with the constant use of the sidewalks in front of plaintiff's property, by thousands of pedestrians.

"Plaintiff already has vehicular ingress to and egress from its garage and market on Cherry Street. If the city of Reading were attempting to deny plaintiff's property all vehicular ingress and egress, the reasonableness of its act might justly be questioned, but plaintiff is now asking for *additional* vehicular ingress and egress, and it demands it to and from one of the most traveled blocks and over one of the most frequently used sidewalks of a city of 115,000 people. Plaintiff is in effect attempting to create a new thoroughfare to and from a busy block on a busy street. That new thoroughfare would not result in the relief of traffic in that block, but in its congestion and entanglement. All this plaintiff asks for solely in its own interests."

To the same effect is Wood v. City of Richmond, 148 Va. 400, 138 S.E. 560. The facts are quite similar to those in our case. The owner contended that as an abutter he had the right of access to his property from both streets on which his property abutted. The Court, while recognizing the general right of the abutting landowner to access, holds that the exercise of that right is subordinate to the right of the municipality to control the use of the streets so as to promote the safety, comfort, health and general welfare of the public and denied to the landowner the right to cut a driveway, where he had access from another street.

In Standard Oil Co. v. Karney, 106 Neb. 558, 184 N.W. 109, 18 A.L.R. 95, although the Court held invalid an ordinance "providing that it shall be unlawful for any person or persons, firm or corporation, to erect or construct upon any lot, piece of lot, or parcel of land, a filling station wherein motor propelled vehicles are run in for the purpose of receiving gasolines and oils between 18th and 31st Streets on Central Avenue, in the City of Kearney, Nebraska," it did so on the ground that it was unreasonable, arbitrary and discriminatory. The Court observed that it could hardly have been intended as a fire protection measure for several reasons and that if intended to prevent interference with the use of the sidewalk by pedestrians

it was unreasonable as the Court was convinced that in a city of less than 8,000 the slight inconvenience to pedestrians crossing the sidewalk was not of sufficient magnitude to justify the passage of the ordinance. So it follows that if the ordinance had been found to be reasonable and appropriate for the prevention of fire or safety of the public it would have been upheld.

Our Commission of Appeals in City of Fort Worth v. Gulf Ref. Co., 55 S.W. 2d 792, upheld the power of the City to levy a tax upon a gasoline station using the sidewalk for vehicular access to its facility, against the contention that the ordinance was unconstitutional and void on the ground that the property owner had the inherent right of ingress and egress to his property.

■ The ordinance before us has merely the effect of a zoning regulation. If a municipality can lawfully invoke its police power to the extent of regulating the kind and character of business that may be conducted within a certain district when required by reasons of public health, safety, comfort and convenience, surely it would not be an unconstitutional exercise of that power in zoning a section of two streets in the center of the business district against vehicular traffic over the sidewalks.

We conclude that the ordinance enacted by the City Council in the exercise of its police power is not invalid as a matter of law though it operates to place a restriction upon the private owner in the use of its property.

The respondent urges three remaining counter points in seeking to uphold the trial court's decision, but we are of the opinion that they are without merit and can be dealt with briefly.

■ Respondent says that the ordinance is not retroactive and was not intended by the City Council to have a retroactive effect, but if retroactive it is invalid as a taking of respondent's property without due process of law. We say the ordinance is not retroactive against respondent merely because its application for the permit had been denied prior to the passage of the ordinance nor for the reason that it had failed to file suit before the passage of the ordinance.

McEachern v. Town of Highland Park, 124 Texas 36, 73 S.W. 2d 487, puts this question to rest in holding:

"* * * There is no merit in plaintiff in error's insistence that because he applied for a permit and filed a suit upon its refusal before the zoning ordinance was enacted, the ordinance cannot be invoked against him. * * *."

Finally respondent says that the ordinance is arbitrary and unreasonable because passed without notice or hearing and because the same does not reflect that it was based on necessity or intended to serve the public safety or welfare. No showing is made here that the City Council failed to follow any charter requirements in enacting the ordinance nor is there cited any rule of law requiring the ordinance to reflect the reasons for its adoption.

The burden of showing that the ordinance is unnecessary, unreasonable and arbitrary is upon the respondent and unless that showing is clearly made, the action of the City Council is conclusive and canont be revised by the courts. Town of Ascarate v. Villalobos, 148 Texas 254, 223 S.W. 2d 945. No evidence was introduced at the hearing below. The case was tried on a stipulation which merely recited the facts as shown in this opinion, together with a statement of negotiations had between respondent's counsel and the City authorities by reason of which, to some extent, respondent claims to have been misled. If this be true it is only necessary to add that estoppel is not available against a municipality in matters affecting or involving its governmental or public functions. City of San Angelo v. Deutsch, 126 Texas 532, 91 S.W. 2d 308; Rolison v. Puckett, 145 Texas 366, 198 S.W. 2d 74.

Now it is evident that the City granted respondent a permit to erect its parking facility and respondent proceeded with the construction, probably with the exception of having vehicular access from both streets. But he has made no showing nor offered any testimony that the refusal of a permit for a driveway on Houston Street would be oppressive or arbitrary or interfere unreasonably with the operation of his garage or that it could not be conducted profitably and economically without the additional driveway. He has not attempted to show that the pedestrian travel along Houston Street is not so heavy and congested as to make the driveway hazardous to the public and a threat to the safety of pedestrians at that point. It may be that such facts can be shown as to convince the Court that the enforcement of the ordinance as to respondent would be unreasonable and unjust. The test of reasonableness to be applied is not solely one of whether the additional driveway on Houston Street

is essential to the profitable operation of respondent's business, but whether the use of the sidewalk would expose the pedestrian public to such hazard and danger as to be out of proportion to the detriment caused to respondent by a denial of that use. Tilton v. Sharpe, 85 N.H. 138, 155 Atl. 44.

■ The respondent has proceeded under a mistake of law in presenting his case and in the interest of fairness and justice, instead of a rendition that would normally be in order, we will reverse and remand to afford the respondent an opportunity to produce such testimony, if any there is. Rule 505, T.R.C.P.; London Terrace, Inc. v. McAlister, 142 Texas 608, 180 S.W. 2d 619.

Reversed and remanded.

Opinion delivered February 26, 1958.

Mr. Justice Griffin, joined by Justice Smith, dissenting.

The fundamental difference in my viewpoint and that of the majority, as I see it, is that I believe the Texas law, and the law in a vast majority of the other states, is to the effect that the right of ingress to Houston Street is property while the majority opinion treats it as a license, or privilege, which may be taken away from the lot owner by the City under its police power, and without adequate compensation being paid. I believe the right of ingress and egress to Houston Street is as much a property right as is the soil constituting the lot on which the City permitted Pigeonhole to erect its storage garage. Everyone would agree that should the City decide to widen Houston Street under its police power, it could not deprive Pigeonhole of the south 10 feet of its lot without making adequate compensation for such property. The majority relies on the power of the City to control the *use* of property by its zoning ordinances passed in the exercise of police power. I have no quarrel with the zoning ordinances of cities. Zoning is only a *regulation of the use* of property and not a deprivation of property. I take it to be fundamental and it requires no citation of authorities that a city or other public body may not take a person's property without paying adequate compensation therefor, except in the event of fire, flood, earthquake, etc. amounting to a major disaster. We have no such case here.

Is this right of ingress and egress property, or is it a mere privilege or license as treated by the majority opinion? "The

word 'property', as used in the section of the constitution referred to [Art. 1, Sec. 17] is doubtless used in its legal sense, and means not only the thing owned, but also every right which accompanies ownership and is its incident." Gulf, C. & S. F. Ry. Co. v. Fuller, (1885), 63 Texas 467, 469.

"The ownership of the lot abutting upon the street carried with it as property the right of free and unimpaired access thereto and egress therefrom, and whatever impaired that right and caused a depreciation of the value of the lot constituted *damage* to the lot within the meaning of the Constitution. O'Brien v. Central Iron Co., 158 Ind. 218, 63 N.E. 302, 57 L.R.A. 508, 92 Am. St. Rep. 305; Gulf, C. & S. F. R. R. Co. v. Fuller, 63 Texas 467." Powell v. Houston & T. C. R. Co., 1911, 104 Texas 219, 135 S.W. 1153, 46 L.R.A. (N.S.) 615.

Adams v. Grapotte, Texas Civ. App., 1934, 69 S.W. 2d 460, aff., 130 Texas 587, 111 S.W. 2d 690, with express approval of the opinion of the Court of Civil Appeals on the issues of law involved in this case, says:

"* * * Access to a public highway is an incident to the ownership of land abutting thereon, and the right to such access is private property passing to the lessee. That right cannot be taken for public purposes or destroyed without adequate compensation being made therefor. Const. art. 1, Sec. 17; Gulf, C. & S. F. Ry. v. Allbright, 7 Texas Civ. App., 21, 26 S.W. 250; McCammon & Lang Lumber Co. v. Trinity & B. V. Ry. Co., 104 Texas 8, 133 S.W. 247, 36 L.R.A. (N.S.) 662, Ann. Cas. 1913E, 870; Anzalone v. Metropolitan District Commission, 257 Mass. 32, 153 N.E. 325, 47 A.L.R. 897, and the annotation following same; 13 R.C.L. p. 142 et seq., Sec. 125; 44 C.J. Sec. 3711, p. 493, et seq. * * *"

At the time the application for permit was filed the sections of the ordinance in force and controlling were:

"Sec. 52-162. Permit required to excavate.

"It shall be unlawful for any person, his agents, servants or employees to dig, plow, blast or make cuts, openings or excavations for any purpose in any street, plaza, sidewalk or other public place in the city without first having made application and obtained a permit therefor. (7-11-18, Bk. F. p. 328.)"

"Sec. 52-170. Issuance of permit.

"Every person making application for a permit in accordance with the provisions of this article, and having complied with such provisions shall be entitled thereto, and, upon filing such application with the city engineer, it shall be his duty to issue such permit, when the provisions of this article shall have been complied with. (7-11-18, Bk. F. p. 328.)"

The ordinance passed on February 23, 1956 is as follows:

"No permit shall be issued for construction of any curb cut or driveway leading on to those portions of Commerce and Houston Streets which lie between Main Avenue and Alamo Street."

The stipulation sets out that the application for the permit filed January 23, 1956 "was in due, proper, and legal form" and made to the proper official, or officials. This permit was refused prior to February 14, 1956. Under the provisions of the two sections of No. 52, set out above, it became the ministerial duty of the City engineer to issue to respondent a permit to cut the curb and construct a driveway on Houston Street. The City had the right to select the location of such driveway and to make other reasonable regulations and requirements regarding the manner and method of construction.

The next question arising is: Was the City, by virtue of the provisions of the ordinance prohibiting curb cuts and driveways on Houston Street, passed February 23, 1956, empowered to refuse respondent's application? That the City can make reasonable regulations with regard to the place, manner and method of construction of driveway is not questioned. This requires no citation of authority, for such regulatory power is universally recognized. The City claims that under its police power it can prohibit the construction of the driveway; and, further, that the mandamus should not be granted because respondent has ingress and egress to and from his parking garage on the Soledad Street side. The general rule, as we have shown above, is that the right of ingress and egress to a public highway is an incident to the ownership of land abutting thereon, and the right to such access is private property which cannot be taken for a public purpose or destroyed without adequate compensation being made therefor, except in a valid exercise of the police power. Oriental Oil Co. v. City of San Antonio, 1919, Texas Civ. App., 208 S.W. 177, 1st col. p. 181; Gulf Refining Co. v. City of Fort Worth, Texas Civ. App., 36 S.W. 2d 285 (4-5), reversed on other ground, but this point is recognized,

55 S.W. 2d 792, l.c. 793 and 794; Bacich v. Board of Control of California, 1944, 23 Cal. 2d 343, 144 Pac. 2d 818 (11, 12); Brownlow v. O'Donoghue, 1921, 51 App. D.C. 114, 276 F. 636, 22 A.L.R. 939 and Note 942; Anzalone v. Metropolitan District Commission, 257 Mass. 32, 153 N.E. 325, 47 A.L.R. 897, and Note 902; City of Shawnee v. Robbins Bros. Tire Co., 1928, 134 Okla. 142, 272 Pac. 457, 66 A.L.R. 1047 and Note 1052; Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, 286 Pac. 353, 359; Newman v. Mayor of City of Newport, 73 R. I. 385, 57 Atl. 2d 173; Howell v. Board of Com'rs. for City of Quitman, 169 Ga. 74, 149 S.E. 779; Royal Transit, Inc. v. Village of West Milwaukee, 266 Wisc. 271, 63 N.W. 2d 62; Goodfellow Tire Co. v. Commissioner of Parks and Boulevards of City of Detroit, 163 Mich. 249, 128 N.W. 410, 30 L.R.A. N.S., 1074 and notes thereto; 39 Texas Jur. 593, Sec. 56; 25 Am. Jur. 448, Sec. 154; 39 C.J.S. pp. 1079, 1081, Sec. 141; McQuillen, Municipal Corporations, 3rd Ed., Vol. 10, pp. 657-658, Sec. 30.56; Idem, pp. 669, 671, Sec. 30.63; Idem, Vol. 11, pp. 142, et seq., 30.193; American Law of Property, Vol. II, pp. 492, et seq., Sec. 9.54.

The majority hold that where a lot has access from one street it becomes a matter of the reasonableness of the use of another driveway to a different street, and the action of the City Council is determinative in the absence of a showing that it acted in an arbitrary, unreasonable or unjust manner in passing the ordinance. Also it contends that since respondent has access on Soledad Street there is no taking of property by refusal of access to Houston Street. A city has police power to protect the safety of the public from traffic hazards and may enact ordinances for such purposes so long as the ordinances do not violate the Constitution or the laws of this State, and are not unreasonable and arbitrary. Town of Ascarate v. Villalobos, 1949, 148 Texas 254, 223 S.W. 2d 945, l.c. 950 (5-7). The presumption is in favor of the validity of any ordinance and the party attacking the same has the burden of showing its invalidity. "* * * The action of the governing body of a city in passing an ordinance is final and conclusive, and cannot be revised by the courts, *unless it is clearly made to appear that their action was arbitrary, unreasonable, and a clear abuse of power. * * *"* The validity of an ordinance is a question of law for the court. Town of Ascarate v. Villalobos, supra, 950 (8-10), (11, 13) and authorities therein cited.

The case of City of Abilene v. E. P. Woodlock, et al, 1955, Texas Civ. App., 282 S.W. 2d 736, ref. wr. of cert. denied; 1956, 351 U.S. 925, 76 Sup. Ct. Rep. 782, 100 L. Ed. 1455, in discuss-

ing the question of reasonableness of a city ordinance quotes from 30-A Texas Jur. 364, as follows:

" '* * * to be valid as an exercise of this power, [police] an ordinance must be reasonable in its operation upon the person whom it affects, and must not be unduly oppressive—that is, it must appear that the means adopted are reasonable, necessary and appropriate for the accomplishment of a legitimate object falling within the domain of the police power.' "

I feel that the ordinance passed on February 23, 1956 is unreasonable and oppressive in that it prohibits ingress and egress from Houston Street rather than regulating such ingress and egress.

In the case of Newman v. Mayor of City of Newport, (1948), 73 R.I. 385, 57 Atl. 2d 173, 177, permits were sought for driveways from plaintiff's property which abutted on three separate streets. The court quashed the record of the action of the Commissioner of Public Works, and the approval of the aldermen denying petitioner's permission to construct driveways. The effect of the action was to return the case to the Commissioner and aldermen to grant the application for permits at places on the three streets as may be deemed reasonable. This case sets out the theory of those courts which hold an owner cannot be denied access to one or more streets merely bcause he has access from his property to another street. The court says:

"We will now turn to a consideration of the constitutional question raised by petitioners. A brief and general discussion of the following points will be of assistance: first, the right of an abutting property owner of access from the highway; and, secondly, the intended purpose of the ordinance. *The right of ingress to and egress from a highway to one's land is not a mere privilege; it is a property right appurtenant to the land.* Subject to reasonable regulation in the public interests, such a right cannot be taken away or materially impaired even under statutory authority without just compensation. Allen & Reed, Inc. v. Presbrey, 50 R.I. 53, 144 Atl. 888. We see no need for further citation of individual cases on this point as many of them, to the same effect as the Allen & Reed, Inc. case, are to be found in the annotation 'Power to regulate or prohibit driveways across sidewalks.' 22 A.L.R. 942, 66 A.L.R. 1052. To the same effect sec. 39 C.J.S. Highway, Sec. 141; 3 Dillon, Municipal Corporations, 5th Ed. 1607, Sec. 1016; 2 Elliott, Roads and Streets, 4th Ed. 1152, Sec. 882, 1168, Sec. 891.

"Pedestrians on the highway are entitled to reasonable protection from the usual and known dangers due to vehicular traffic. In the exercise of its police power the state, either directly or by delegation of such power to a municipality, may enact or authorize the enactment of laws to attain this end, provided that private property is not in effect confiscated under the guise of regulation. An owner of property in a populous city or growing community is bound to appreciate that, for the common welfare and public safety, the use of his land may be restricted by reasonable regulation. But, although safety in the use of highways is a matter of serious public concern, yet a municipality cannot disregard the property rights of an owner of land abutting on a highway to the extent of denying him a reasonable access to his property for a permitted and lawful purpose." (Emphasis added).

The Court also held the action of the Commissioner and Board, in limiting petitioner to the one driveway on only one street which was in existence at the time of the filing of the application, was arbitrary and illegal. Further, the Court says: "* * * They [City] then argue that since the Newmans already have a driveway to their property, they do not need any additional driveways to serve the structures presently thereon. This argument overlooks the fact that, in the absence of reasonable restrictions duly imposed by law an owner of land is entitled to use or sell his land for any lawful purpose. The adequacy of ingress and egress is an important element in fixing the valuation of land that is adopted and intended to be used for a lawful purpose. * * *"

Under all the authorities every owner of an interior lot in this same block and abutting on Houston Street with respondent can be denied his right of access thereto by the City, only by payment of just compensation. To hold that respondent's right of access to Houston Street can be denied without paying for it would be an unjust discrimination against respondent, and denial of equal protection under the law.

The majority view is the minority rule in the United States. The case most relied upon for the majority's position is the case of Farmers-Kissinger Market House Co. v. City of Reading, 310 Pa. 493, 165 Atl. 398, which holds that where a market house has adequate access by entrances to one street it is not a deprivation of property under the 14th Amendment of the United States Constitution to refuse entrance driveways into a very busy and heavily traveled street. The property of the

Market House Co. abutted on Penn Street and extended through the entire block so as to abut on Cherry Street. On this property the Market House Co. had erected a large garage. The garage fronted on Cherry Street and had an entrance from Cherry Street. Market House Co. was seeking an entrance to the garage from Penn Street so customers could drive across the block to the Cherry Street garage.

The City relies upon the case of Fowler v. City of Nelson, (1923), 213 Mo. App. 82, 246 S.W. 638. That case holds that the city may prohibit an owner of property abutting on a street from using a driveway to the street, where there is an alley upon which the property abuts which affords access. The court below rendered judgment for the city and it was affirmed. In the opinion the court says: "* * * The testimony shows that he unloads much of his incoming stock on the sidewalk in front of his store, * * *;" and "* * * We do not understand that he [plaintiff] charges that he has not access to his property from the street * * *." I do not find the facts of that case similar to those in the case at bar. Furthermore, this Court in Powell v. Houston & T. C. R. Co., 104 Texas 219, 135 S.W. 1153, 46 L.R.A., N.S. 615, approves the following quotation from Lewis, On Eminent Domains, with regard to the rights of abutting owners: "The conclusions thus stated in the first edition have been verified by numerous decisions since rendered, and, we believe without dissent, except in the case of Mo., * * *." This we construe to be an expression by this court, contrary to the Missouri rule.

I would affirm the judgments of the trial court and the Court of Civil Appeals.

Opinion delivered February 26, 1958.

Rehearing overruled April 9, 1958.