Argued March 3, affirmed November 24, 1965

# OREGON INVESTMENT CO. ET AL *v.*
# SCHRUNK ET AL

408 P. 2d 89

64

*George W. Mead,* Portland, argued the cause and filed briefs for appellants.

*Richard A. Braman,* Deputy City Attorney, Portland, argued the cause for respondents. With him on the brief were Alexander G. Brown, City Attorney, and Emory J. Crofoot, Deputy City Attorney.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL,* DENECKE and LUSK, Justices.

LUSK, J.

This is a declaratory judgment proceeding in which the court allowed a motion of the defendants for a decree on the pleadings. Plaintiffs appeal.

---

* Did not participate in this decision.

Plaintiffs are, some of them, the owners, and others the lessees, of a half block in the downtown "core area" of the City of Portland. The property is used as an automobile parking lot. Defendants are the mayor, city commissioners (comprising the City Council), and city attorney of the City of Portland. Plaintiffs' real property is bounded on the west by SW Fourth Avenue, on the north by SW Morrison Street and on the east by SW Third Avenue. The City permits vehicular ingress to and egress from the premises on the SW Morrison Street and SW Third Avenue sides, but prohibits it on the Fourth Avenue side. Plaintiffs claim the prohibition is arbitrary and constitutes a taking of their property for public use without just compensation in violation of Oregon Constitution, Article I, section 18.

The admitted facts disclosed by the pleadings are as follows: Plaintiffs' property is 100 feet abutting SW Fourth Avenue, 200 feet abutting SW Morrison Street, and 100 feet abutting SW Third Avenue. The east curb lane of SW Fourth Avenue abutting plaintiffs' real property is a 24-hour bus loading zone, so designated by the City Council. The first designation was made December 14, 1945, and included 80 feet immediately south of SW Morrison Street. It was extended to 119 feet on June 17, 1955, and again extended on October 30, 1958, so as to include the entire easterly curb lane between SW Morrison Street and SW Yamhill Street, the next street paralleling and south of SW Morrison Street.

Under the Portland zoning ordinance plaintiffs' property is in a C-1 or central commercial zone. The ordinance authorizes the Portland City Planning Com-

mission to permit conditional use of such property for offstreet parking facilities. It further provides:

"Section 6-2217. REGULATIONS.

\* \* \* \* \*

"(e) OFF-STREET PARKING FACILI-TIES:

"1. No permit shall be issued for the construction or alteration of such facilities or for the cutting of any curb for a driveway to such facilities unless approval is given by the City Planning Commission and the City Traffic Engineer."

On June 20, 1962, plaintiffs applied to the Portland City Planning Commission for approval of the use of their said real property as an offstreet parking facility and in such application proposed curb cuts to accommodate three driveways, each 36 feet in width (one on SW Fourth Avenue, one on SW Morrison Street, and one on SW Third Avenue). The Portland City Planning Commission, by its Zoning Committee, approved such application on August 6, 1962, subject to the condition, among others, that there be no vehicular accessway across the 100-foot front line of said real property on SW Fourth Avenue. The plaintiffs appealed from this condition to the City Council and such appeal was denied on September 20, 1962. The condition, as alleged in the defendants' answer and admitted in the reply:

"\* \* \* was imposed for the reason that a vehicular accessway to plaintiffs' real property on S. W. 4th Avenue would allow vehicles entering and leaving said real property to cross through an area designated by the City Director of Transportation and used by the public as a 24-hour bus loading zone, and to cross a sidewalk whereon

pedestrian traffic is concentrated and large numbers of passengers stand awaiting the arrival of motor buses * * *."

Plaintiffs on October 25, 1962, filed an acceptance of the terms and provisions of the conditional use as granted by the City Council and thereafter installed an offstreet parking facility upon the said real property.

Plaintiffs admit by their pleading that their right of access to and from Fourth Avenue is subject to the paramount right of the public to use SW Fourth Avenue and of the defendants to impose reasonable regulations and limitations consistent with such public use. They deny that the defendants have the right to totally prohibit vehicular access to their property from Fourth Avenue.

Before going to this, the pivotal question in the case, we will consider the argument most vigorously and at great length pressed upon us in the brief of the plaintiffs. They say that the court cannot properly determine the constitutional question on the pleadings, but must first receive evidence which would show whether the defendants' exercise of power is reasonable under the circumstances. It is urged, for example, that the trial court should have heard evidence upon the question whether the bus loading zone should have been located elsewhere than in front of plaintiffs' property or whether the necessity for so locating it outweighed the injury to plaintiffs.

We think the unexpressed and erroneous major premise of this argument is that the defendants are charged with the burden of establishing the constitutionality of their action. The contrary is, of course, the case: *Dennis et ux v. City of Oswego et al*, 223 Or

60, 66, 353 P2d 1044. Admittedly, the subject of the defendants' action was within the scope of the city's police power—the power to regulate the use of the streets and public thoroughfares, to keep the streets and sidewalks in an open and safe condition for public use and to control and limit traffic and classes thereof and vehicles and classes thereof on the streets, avenues, and elsewhere: Portland City Charter, § 2-105. The circumstances which led to the city's action in denying plaintiffs' application for access on SW Fourth Avenue—as above set forth—were alleged in the defendants' answer and admitted in the reply. Whether those circumstances are legally sufficient to justify the city's action is, of course, a question which calls for determination. But if there are facts and circumstances in addition to those disclosed by the pleadings and which affect such determination it was incumbent upon the plaintiffs to plead them. As stated by Mr. Justice Brandeis, speaking for the court in *Pacific States Box & Basket Co. v. White,* 296 US 176, 185, 56 S Ct 159, 80 L Ed 138, 101 ALR 853, 860:

> "The burden [of showing arbitrary action] is not sustained by making allegations which are merely the general conclusions of law or fact. (Citations.) Facts relied upon to rebut the presumption of constitutionality must be specifically set forth. (Citations.)"

Neither in their complaint nor their reply have the plaintiffs set forth a single fact, either generally or specifically, which in any way qualifies the admissions in their reply. A judgment on the pleadings in favor of a defendant is properly allowed if the facts set forth in a separate defense constitute a complete answer to the cause of action alleged in the complaint and those facts are admitted by the reply: *Morford v.*

*Calif.-West. Life Co.,* 161 Or 113, 120, 88 P2d 303. It makes no difference that the effect of such a judgment is to sustain the constitutionality of a legislative act, as *Pacific States Box & Basket Co. v. White,* supra, illustrates. The decision in that case sustaining the constitutionality of the challenged statute was upon a motion to dismiss, which is tantamount to a demurrer.

We therefore go to the question of the reasonableness of the city's action.

■ While an abutting proprietor's right to the use of the street in front of his premises as a means of ingress and egress is a property right: *State Highway Commission v. Burk et al,* 200 Or 211, 228, 265 P2d 783; *Sweet et al v. Irrigation Canal Co.,* 198 Or 166, 190-191, 254 P2d 700, 256 P2d 252; *Barrett et al v. Union Bridge Co.,* 117 Or 220, 223, 243 P 93, 45 ALR 521; *Iron Works v. O. R. & N. Co.,* 26 Or 224, 228-229, 37 P 1016, 46 Am St Rep 620, 29 LRA 88; yet, as we said in *Hickey v. Riley,* 177 Or 321, 332, 162 P2d 371, in holding valid a parking meter ordinance: "The rights of abutting proprietors to access to their premises are subservient to the primary rights of the public to the free use of the streets for the purposes of travel and incidental purposes." See, also, *Morris v. City of Salem et al,* 179 Or 666, 672-673, 174 P2d 192; *Barrett et al v. Union Bridge Co.,* supra; *Brand v. Multnomah County,* 38 Or 79, 60 P 390, 62 P 209, 84 Am St Rep 772, 50 LRA 389. The interference with the abutting owners' rights of access, held in these cases not to be a "taking," was incidental to the carrying out of a legitimate public purpose. The rule is otherwise where the interference is caused by the use of the streets for other than legitimate street purposes, as in *Sweet et al v. Irrigation Canal Co.; Iron Works v. O. R. &*

*N. Co.,* both supra, and in *Ail et ux v. City of Portland,* 136 Or 654, 299 P 306.

■ Here all that the city did was in pursuance of a legitimate public purpose. It had the undoubted authority to regulate bus stops: 7 McQuillin, Municipal Corporations (3d ed) §§ 24.695, 24.697; *Town of Leesburg v. Tavenner,* 196 Va 80, 85, 82 SE2d 597. The plaintiffs, as already indicated, do not in their pleadings challenge the reasonableness of the city's action in this regard and no presumption can be indulged that it was unreasonable. The city was authorized, under its zoning ordinance (the applicable provisions of which are pleaded in the answer and admitted in the reply), in granting plaintiff's application to use their property as a parking facility, to impose "such conditions and restrictions as it deems necessary to protect the best interests of the surrounding property or neighborhood or the City as a whole:" Ordinance number 110103, Planning and Zoning Code, §§ 6-2204, 6-2217. The validity of these provisions is not called in question. In fact, the plaintiffs admit that they "filed an acceptance of the terms and provisions of the conditional use as granted by said City Council and thereafter installed an offstreet parking facility upon the said real property."

The problem with which the city had to deal is similar to that in *Dennis et ux v. City of Oswego et al,* supra. There we sustained a zoning ordinance excluding automobile service stations from a commercial area of the city as against the claim of arbitrary and capricious municipal action. The ordinance recited, among other things, that it was passed to safeguard pedestrians on the sidewalk and to prevent traffic congestion and we held that these were legitimate reasons

supporting the ordinance. See, also, *Jehovah's Witnesses v. Mullen et al,* 214 Or 281, 309, 330 P2d 5, 74 ALR2d 347.

■ It is apparent that the concern of the city in refusing to allow a curb cut on SW Fourth Avenue and thereby barring the use of the sidewalk on that street for the passage of automobiles going into and leaving plaintiffs' property, was with the public safety and convenience—with the safety in a heavily congested area of pedestrians, including persons boarding and departing from buses, and the safe and orderly movement of automobile traffic. These, of course, are legitimate public aims and, in the circumstances of this case, including the fact that plaintiffs' rights of access on SW Morrison Street and SW Third Avenue remain unimpaired, the court cannot say that the means employed to achieve them were unreasonable or arbitrary. It may be that some depreciation in the value of plaintiffs' property or some lessening of profits from their parking business has resulted—though neither is alleged. But if so, it is *damnum absque injuria.* There was no "taking" of plaintiffs' property within the meaning of Article I, section 18, of the Oregon Constitution. As this court said in *Brand v. Multnomah County,* supra, 38 Or at 92, quoting *Northern Transportation Company v. Chicago,* 99 US 635, 25 L Ed 336:

> "Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision."

See, also, *Morris v. City of Salem et al,* supra, 179 Or

at 673; 1 Nichols on Eminent Domain (3d ed) 95-101, §§ 1.42(2) and (3).

The question of the power to regulate or prohibit an abutting owner's right of access is the subject of an annotation in 73 ALR2d 652 to *San Antonio v. Pigeonhole Parking*, 158 Tex 318, 311 SW2d 218, 73 ALR2d 640. Section 6 of the Annotation, pages 667-670, deals with cases involving the deprival of all vehicular access. It is generally held that where there is a right of access to only one street the owner may not be deprived of it by a municipality unless compensation is given: 25 Am Jur 448-449, Highways § 154, though there is a contrary decision in *The Alexander Company v. City of Owatonna*, 222 Minn 312, 24 NW2d 244, where it appeared that the maintenance of a business driveway over a public sidewalk at the point in question would be "a real traffic hazard." Where there was access to the property on two streets it has been held that a municipality is without power to deny the right on either street: *Brownlow v. O'Donoghue Bros.*, 51 App DC 114, 276 F 636, 22 ALR 939; *Newman v. Mayor of Newport*, 73 RI 385, 57 A2d 173; *Elder v. Mayor of Newport*, 73 RI 482, 57 A2d 653. The reasoning is that since the right of access is a property right it may be regulated but not prohibited. Other courts have taken a different view: *San Antonio v. Pigeonhole Parking*, supra; *F.-K. Market House Co., Inc. v. Reading*, 310 Pa 493, 165 A 398; *Wood v. City of Richmond*, 148 Va 400, 138 SE 560.

■ We have no occasion to express an opinion as to whether vehicular access may be denied to an abutting owner whose property fronts on only one street. We agree, however, with those courts which hold that where the property fronts on more than one street,

access may be denied, under particular circumstances, at one of the streets if adequate means of access remain to the owner at the other street or streets. To us this seems a reasonable exercise of the power of the city to provide for the public safety, convenience and welfare under the conditions created by modern motorized traffic in a large city.

We think that the observations of Mr. Justice Holmes in his dissenting opinion in *Tyson & Bro. v. Banton,* 273 US 418, 445-446, 47 S Ct 426, 71 L Ed 718, 729, 58 ALR 1236, fit this case:

> "* * * [W]hen legislatures are held to be authorized to do anything considerably affecting public welfare it is covered by apologetic phrases like the police power, or the statement that the business concerned has been dedicated to a public use. The former expression is convenient, to be sure, to conciliate the mind to something that needs explanation; the fact that the constitutional requirement of compensation when property is taken cannot be pressed to its grammatical extreme; that property rights may be taken for public purposes without pay if you do not take too much; that some play must be allowed to the joints if the machine is to work. But police power often is used in a wide sense to cover and, as I said, to apologize for the general power of the legislature to make a part of the community uncomfortable by a change."

In view of the foregoing it is not necessary to discuss the contention of the defendants that plaintiffs are estopped to question the validity of the condition attached to the permit issued by the city because they accepted and acted upon the permit by using their premises as a parking lot.

The decree is affirmed.