**CITY OF FORT WORTH, Appellant,**

**v.**

**Harvey G. PIPPEN, Individually and as Officer and Agent of Rattikin Title Company, et al., Appellees.**

**No. 16898.**

Court of Civil Appeals of Texas.

Fort Worth.

April 26, 1968.

Rehearing Denied July 19, 1968.

S. G. Johndroe, Jr., City Atty., Jerome H. Parker, Jr., Asst. City Atty., Fort Worth, for appellant.

Arthur Lee Moore, Fort Worth, for appellee Harvey G. Pippen.

Walter S. Fortney and Richard Owens, Fort Worth, for appellee Rattikin Title Co.

## OPINION

MASSEY, Chief Justice.

The appeal is from a judgment *non obstante veredicto* rendered in behalf of defendants Harvey G. Pippen and Rattikin Title Company, a corporation, in a suit against said defendants and Herman F. Hall. Plaintiff City of Fort Worth obtained judgment against defendant Hall and he did not appeal.

Reversed and rendered.

## LEGAL PRINCIPLES

Declarations upon abstract is the method adopted in beginning this opinion.

■ Under well known principles of contract and agency law a principal who desires to purchase property of a third party through his agent may contract to make the purchase for a stipulated price. When the agent, within the scope of his authority, agrees with the third party upon a price to be paid for such property there is a meeting of the minds of the principal and the third party and the agreed price is that which the third party has agreed to accept and the principal has agreed to pay to or for the benefit of the third party. Upon consummation of the transaction the principal, in exchange for the title to the property purchased, is obliged to pay—and the seller entitled to receive—no more than the amount so agreed. Should the selling third party, through mistake, inadvertence or otherwise, receive more than the amount he has agreed to accept the excess would be improperly received for he is not entitled to title thereto. The same rule applies as to any excess paid to others for the benefit of the third party. Title to such excess would remain in the principal, who would be entitled to receive it back upon demand from the seller or from any other person in whose hands it might be found.

■ And, where (in an assumed transaction) an excess in funds paid or payable to or in behalf of the third party (over and above the amount upon and to the extent of which there was a meeting of the minds between the principal and the third party) has been delivered in escrow it is the duty of the escrow agent, as fiduciary of the principal delivering funds into escrow, to inform and make full and fair disclosure to such principal of the resulting excess. The occasion would be upon the discovery of the existence of any excess above the amount required to be delivered to the third party or deliverable to others for his benefit.

■ And, where the escrow agent employs a sub-agent or servant to handle the transaction and the sub-agent is apparently doing the very thing which he is employed to do, with the understanding and reasonable belief on the part of the principal that the sub-agent is acting within the scope and course of such employment, the escrow agent will be bound by the sub-agent's knowledge and awareness that there is an excess in funds to which the principal continues to hold title, of which he should be informed, returnable to him upon demand. Restatement of the Law, Second, Agency, Ch. 7, "Third Person vs. Principal," § 261, "Agent's Position Enables Him to Deceive," and Ch. 8, "Notice Through Agent," § 282, "Agent Acting Adversely to Principal."

■ And, if the sub-agent for the escrow agent should convert such excess to the prejudice of the principal in that resulting loss by him should occur, or, if through the negligent or wrongful act of such sub-agent the escrow agent loses physical control of the excess which should be returned to the principal, the escrow agent is nevertheless liable to the principal for the amount of loss thereby sustained, though upon payment thereof the escrow agent is entitled to have and recover of and from his sub-agent the amount paid as an indemnity. Cases under 21 Tex.Digest, "Indemnity," ⚖13(1), "Right of one compelled to pay to indemnity from person primarily liable."

■ Furthermore, in such an instance, the principal would have a cause of action

**242**

for actual loss and damage against both the escrow agent and his sub-agent, plus a cause of action for exemplary damages against the sub-agent if it can be established that his actions or omissions to act were wilful and malicious or amounted to gross negligence. Of course, the sub-agent would be liable to such a principal as a joint tort feasor if he knowingly participated in the breach of fiduciary duty owed by the principal's purchasing agent to his principal, not only for the loss and damage sustained by the principal but also for any improper gain or benefit thereby acquired by the purchasing agent.

■ The escrow agent, being not only a fiduciary of the principal but the party who is presumed to be the only one who possesses the requisite knowledge, is obliged to make accountability to the principal. As such the escrow agent has the burden of explanatory proof. See cases in 53 A.L.R. 815, Annotation, "Accounting in equity in case of tort"; 29 Am.Jur.2d p. 164, "Evidence", § 131, "Party having knowledge of facts"; Bogert, Trusts and Trustees, 2nd Ed., § 972, "(Accounting and Compensation)—Credits to Trustee on Accounting."

■ If, through negligence or malfeasance of the sub-agent, funds which belong to and are returnable to the principal are not available to be so returned it is the burden of the escrow agent to make explanation. If indeed there be any portion thereof expended in accordance with the escrow responsibility, or such thereof which in fact enured to the benefit of the principal, the burden of proof lies upon the escrow agent in making accountability to the principal. The same thing, of course, would be true as to the sub-agent's responsibility to make accountability to the escrow agent. Such burden persists both as to the fact that the expenditure enured to the benefit of the principal and the amount thereof.

The aforestated principles of law have full application to the circumstances of the case presented.

## THE FACTS

In connection with street widening and improvement and other projects the City of Fort Worth would oftentimes find it necessary to purchase both improved and unimproved real estate. From the standpoint of economy to such a transaction it was more desirable to acquire unimproved property. This could not always be done, and when improved property was involved it would be to the interest of the City that the owner keep and remove the improvements, so as to eliminate activity by the City in dealing with unwanted improvements. If possible the arrangements made would involve agreements to thus accomplish the City's preference in such respect.

To acquire such land and to negotiate with sellers thereof relative to improvements if any, the City acted through the office of its long-time, trusted employee, Herman Hall, of the City's land department. The organizational head of the land department would receive information of Hall concerning any proposed "trade" he had orally agreed upon with a prospective seller, and, upon agreement therewith would transmit the same information to the City Manager with recommendations. The City Manager would present the matter to the City Council with recommendations and request that it authorize consummation of a transaction between the City, as purchaser, and land owner as seller, upon the basis of the proposed "trade" Hall had orally agreed upon.

The City of Fort Worth did not use the services of Hall in connection with the actual consummation of the transaction. Consummation of this character of business dealing requires the kind and character of work done by title companies, in that such involves the checking of titles, etc., the preparation or examination of instruments involving transfers of title, releases, etc., and the "closing" of transactions whereby title is received by purchasers and funds in consideration thereof presumably received by the sellers or by others for their benefit.

The City engaged the services of Rattikin Title Company, a corporation, for purposes of such consummation. Additionally, the City employed and paid for the services of Rattikin Title Company as "escrow agent" to take and receive its money for use in making all the disbursements and payments necessary to discharge the City's obligations as to each transaction resulting from Hall's initial "trade".

As its sub-agent for purposes of performance of its duties both as a title company and as escrow agent the Rattikin Title Company used the services of Harvey G. Pippen, an officer of the corporation, and long-time agent and employee. There is no question but that for a period of years prior to the first of the transactions with which we are concerned, and during the course of all such transactions, Mr. Pippen had so performed the duties for which he was employed that it was the understanding and reasonable belief on the part of the City of Fort Worth that in so acting he was performing such duties within the scope and course of his employment by Rattikin Title Company, as the very thing he was employed to do.

In connection with the transactions involving the services of Pippen, as sub-agent for Rattikin Title Company, in handling transactions for the City of Fort Worth pursuant to "trades" initiated by Hall, there were instances wherein it was established that Hall received and converted funds which in our opinion belonged to the City. There were a great many such instances. As to approximately eighty-eight (88) such transactions the jury found stated amounts converted by Hall. Under such findings a total net amount so converted was $60,-011.24. Judgment was rendered against Hall for said amount as actual damages, plus $25,000.00 exemplary damages. No appeal was perfected by Hall.

As to each instance wherein an amount was found by the jury as converted by Hall, it furthermore found that Pippen knew that Hall was converting the same to his own use and benefit at the time each Rattikin Title Company check was issued. From the evidence in the case there is no question but that it was through the appropriation of the proceeds from such checks that Hall's acts of conversion were accomplished. It was through the instrumentality of Pippen that the checks were prepared and issued, with delivery made to Hall. Said checks had the payee named therein as to "J. Hall Construction Company", "J & H Construction Company", "T & M Construction Company", "T & H Construction Company", and "Astra Electric Company". Hall would endorse the checks in the name of the payee therein, but would deposit them into his own account in a local bank.

The simplest example of a transaction in which a conversion occurred was as follows: Hall in his official capacity as land agent would call upon the owner of land which the City of Fort Worth desired to acquire and orally agree with such owner to purchase the land for $9,000.00 but would report to his superior that he had agreed to purchase same for $10,000.00. The machinery of government would progress to the point where there was an authorization to consummate purchase at that price. A letter would issue and be delivered to the Rattikin Title Company, attention of Mr. Pippen, reading something like this: "Dear Sir: This is a request for a title policy on a strip of land off tract 13, M. Watson Survey, which the City has agreed to purchase for $10,000.00 from Mr. John Doe, JE6–4361. The City will pay for title policy, taxes to be prorated date of closing. We will mail you a check in the next few days. Legal description attached." Shortly thereafter the check for $10,000.00 would be delivered by the City to Rattikin Title Company and by said company deposited in an escrow account. Upon the "closing" performed by Pippen, as sub-agent for the title company, escrow agent, a Rattikin Title Company check would be delivered to Mr. John Doe, as seller, in the amount of $9,000.00, with an additional check of $1,000.00 delivered to Hall. The notations

on the $1,000.00 check would have reference to the transaction authorized by the City, and when it cleared and became a part of the retired records of the title company would apparently become a legitimate part of a completed transaction. Only Pippen and Hall would have knowledge that it was not. The "Seller's Closing Statement" delivered to Mr. John Doe would show a $9,000.00 transaction. The "Purchaser's Closing Statement" delivered to the City of Fort Worth would show a $10,000.00 transaction. Investigation of the files by someone other than Pippen in the Rattikin Title Company organization would perhaps reveal the irregularity, but Pippen was an officer and trusted employee and there was no occasion for Rattikin Title Company to make such an investigation.

Other, more complicated examples would be in instances wherein expense would be involved because of the presence of improvements necessary to be moved back on remaining property of the seller or in any event moved off the property the City desired. In such instances the handling by Rattikin Title Company was such that for "book purposes" all such costs would be charged against the seller's responsibility as applied to the transaction, though portions of the amounts to be delivered as consideration payable by the City might be held in the escrow fund until work for which such was to be paid was completed. We believe such funds constituted property of the City payable to others but for the benefit of the seller. An example of this would be where the seller's house would be moved back on a lot in an instance where only the front of the lot was needed for street widening purposes. The amount of the house moving contract would be held in the escrow fund, with delivery made by Rattikin Title Company check made payable to the house moving contractor for the benefit of the seller. Additionally, there would be checks issued to a fictitious company such as "J & H Construction Company", the proceeds of which would be the subject of conversion by Hall. The "Seller's Closing Statement" and the "Purchaser's Closing Statement" would cover the converted amount in a manner similar to that of the "John Doe" sale above given as an example. The selling third party would receive payment direct and, as applied to the amount paid for his benefit would receive credit, in full satisfaction of the consideration payable by the City. However Hall would receive the proceeds of the additional checks without his knowledge.

## THE BURDEN OF PROOF

In the trial of the case the City of Fort Worth undertook to discharge the burden of proof to the extent of evidence presented. The evidence was insufficient to raise issues upon the benefit, if any, the City received as result of Hall's use of the converted funds. There were no alternative pleadings by either Pippen or the Rattikin Title Company in which "off set" or reduction were claimed by either of them as by showing that the City received the benefit of the proceeds of the checks to "J & H Construction Company", "Astra Electric Company", etc., which were converted by Hall. In other words neither of them undertook the task of showing that Hall necessarily expended any portion thereof in the removal of buildings, signs, fences, trees, shrubs, etc., though it may be that if Hall did so the City received a benefit. Of course the case is equitable in nature and had there been proof in such respect it might have been the opinion of the trial court that an allowance by way of credit was the entitlement of Rattikin Title Company, the innocent party, despite the state of the pleadings.

The question has given us some concern, but we have become convinced and accordingly hold that the burden of proving a proper amount of any such "off-set" or credit would, especially in view of the fiduciary relationship between the City of Fort Worth and the Rattikin Title Company, be properly cast upon the latter. The same would apply as to Pippen, in view of his

fiduciary relationship to both the Rattikin Title Company and the City of Fort Worth.

Such burden not having been discharged it would appear that the City of Fort Worth, in view of the evidence in the case and the jury findings returned, was entitled to have judgment for actual damages in the amount of $60,011.24 against both Harvey G. Pippen and the Rattikin Title Company, plus a judgment for exemplary damages as against Harvey G. Pippen in the amount of $10,000.00. We are of the opinion that the trial court erred in refusing to render such a judgment on the verdict and, instead, rendering a judgment notwithstanding the verdict.

Basis of cross-points of error filed and briefed by Rattikin Title Company have relation to what we have written relative to the matter of "off-set" or credit. In its brief is stated: " * * * Herman Hall saw to it that the property purchased by the City was made ready for the public improvements. Whether it was by his own physical efforts and those of his father, or whether it was by the expenditure of the funds previously deposited in his bank account, houses and garages were moved, trees and shrubbery were removed, buildings demolished, and other work done. The City has shown in a few selected cases that neither Herman Hall nor anyone else did any work on the property. In the great majority of the cases, however, the City has entirely failed to maintain its burden of proof to show that the money was converted and, in fact, the City's own evidence shows the contrary to be true.

"Herman Hall, clothed with all the actual, implied and apparent authority the City could give him, approached the various property owners and offered them a price for a strip of land to be taken, a price for damages to the residue or for loss of trees, etc., and told them that their improvements would be moved or trees removed at no expense to them. The City denies that it did any work and the evidence shows that the owners either thought the City was doing the work or knew that Herman Hall had arranged for it to be done.

"It is apparent that improvements were moved and other work done on behalf of either the owner or the City and that neither the owner nor the City paid any additional money for this work. The cost of the labor and materials was covered by the funds which were disbursed by this Appellee at the direction of Hall, and which Hall deposited in his bank account. If Hall did the work or had it done, he was entitled to be paid. If he misapplied some of the funds, the burden of proof was on the City to prove its allegations in each paragraph of its pleadings that Hall's companies did no work.

"Appellee submits that it would be simply unjust and inequitable to allow Plaintiff to recover from Rattikin Title Company the cost of moving a house, say $5,000, when the house was moved for the benefit of the Seller and for the benefit of the City in its program of public improvements."

We have already mentioned that Rattikin Title Company's pleadings had no alternative claim for "off-set" or credit upon the theory advanced; that the City was not entitled to be unjustly enriched when to allow such would be at the title company's expense. Since we have concluded that the burden of proof would lie upon Rattikin Title Company to show the amount of unjust enrichment as well as the fact thereof in any respect, a burden which was not discharged, we overrule all cross-points of error. They are all necessarily predicated upon the theory that the burden of proof was the obligation of the City of Fort Worth. Our holding is that such burden was to be discharged by those in the position of trustees, Rattikin Title Company and Harvey G. Pippen.

We cannot consider remand of the case upon the theory that it was tried on a wrong theory. It was tried upon the right theory, at least in behalf of the City of Fort Worth. In disregard of the verdict of the jury a take nothing judgment was rendered in be-

half of Harvey G. Pippen and Rattikin Title Company and in denial of the claim Title Company and in denial of the claim is reversed.

Joint and several judgment is here rendered in behalf of the City of Fort Worth and against Harvey G. Pippen and the Rattikin Title Company (to be considered as joint and several in connection with the judgment against Herman F. Hall) for actual damages in the amount of $60,011.24, plus interest. Additionally, the City of Fort Worth shall have its judgment for $10,000.00, as exemplary damages, against Harvey G. Pippen. Interest on said amounts at six per cent per annum shall be calculated from June 26, 1967.

## ON MOTION FOR REHEARING

Rattikin Title Company and Harvey G. Pippen, having won their case upon the theory of law adopted by the trial court but lost it upon the theory of law announced by this appellate court, should in our opinion have the opportunity to establish their case in respect to offset entitlement as applied to those transactions wherein the City of Fort Worth received benefits from escrow funds converted. Invalidity of the accounting made by them has been established by the City. They should be permitted to make proof in correction of such accounting. Therefore the judgment indicated in our original opinion will not be this court's judgment. Our action in said respect will be that set out in the final paragraph of this opinion upon Motion for Rehearing.

Through a principal witness the City made it apparent that only as to the City's funds going into the pockets of Herman F. Hall did it lay claim; that it made no claim as to any expenditure thereof which went to the benefit of a seller according to a legitimate obligation of the City and in no part to the benefit of Hall, Pippen, or Rattikin Title Company. Any such use of its funds enured to the benefit of the City in that it was in discharge of the City's obligation.

In the trial heretofore conducted it appeared that as applied to many transactions there was evidence which could be produced upon another trial in elimination of the probability that judgment based upon the jury findings heretofore made would result in an unjust enrichment of the City of Fort Worth. The rendition coupled with the reversal decided upon in our original opinion was predicated upon the want of pleadings and evidence on the part of Rattikin and Pippen bearing thereupon. On motion for rehearing we have arrived at the conclusion that the justice of the case requires remand rather than rendition.

Where, upon reversal of a case, it seems probable the ends of justice may be better served by remanding than by rendering judgment, the former course should be pursued, notwithstanding it is apparent that a full consideration of the case necessitates that the pleadings be amended and additional testimony supplied. City of San Antonio v. Pigeonhole Parking of Texas, 311 S.W.2d 218, 223 (Tex.Sup., 1958); Associated Oil Co. v. Hart, 277 S.W. 1043, 1045 (Tex.Com.App., 1925); Smith v. Patton, 241 S.W. 109, 118 (Tex.Com. App., 1922); Pershing v. Henry, 255 S.W. 382 (Tex.Com.App., 1923, adopted); Camden Fire Ins. v. Yarbrough, 215 S.W. 842 (Tex.Com.App., 1919, holding approved); Texas Rules of Civil Procedure 434, "If Judgment Reversed." We believe we have authority to so order since the judgment of the trial court, rendered at the stage of trial reached, is hereby reversed.

The effect of what we have written in the original opinion is that the trial court erred in rendering its judgment *non obstante veredicto*. That there was error in so doing remains our opinion. With the entire case returned to the trial court— and with the pleadings of Rattikin Title Company and Pippen amended on the theory of set-off or counter-claim in dimunition of the damages of the City of

Fort Worth—there would be no necessity of a retrial of issues already determined. An order could be entered by the trial court for a separate trial of what might be treated as a counterclaim under T.R.C.P. 174, "Consolidation; Separate Trials". See 36 Tex.Law Rev. 339, "Severance and Separate Trial in Texas", an article by Robert A. Hall; Evans v. Young County Lumber Company, 368 S.W.2d 783 (Fort Worth Civ.App., 1963, no writ hist.); all three opinions in case of Ferguson v. Ferguson, 327 S.W.2d 787 (Fort Worth Civ.App., 1959)—reversed at 338 S.W.2d 945 (Tex. Sup., 1960)—opinion on remand at 342 S. W.2d 13 (in 1960, writ ref. n. r. e.); Bellmead State Bank, Waco v. Anderson, 293 S.W.2d 834 (Waco Civ.App., 1956, no writ hist.). This we conceive as procedurally proper.

The law of the case will be settled as declared in our original opinion and in this opinion on rehearing. Upon further proceedings in the trial court there would be no necessity to retry issues already determined, which settle liability relative to transactions where evidence shows that no benefit enured to persons other than Hall. Reference to them and the evidence under which they were answered could only be of incidental importance.

In connection with the further trial we believe it is our duty to correct certain impressions we believe existent in the minds of Rattikin Title Company and Harvey G. Pippen. We therefore state as follows: (1) Said appellees would not be entitled to receive any credit for the value of any personal work on the part of Hall in connection with any transaction; (2) no estimate, bid, or bill of record or in the file of the City would constitute evidence that work was done or was necessary to be done in connection with any transaction, nor evidence of the reasonable cost or value of any work done; and (3) as applied to any work which might be proven to have been performed in connection with any transaction, in which there was or remaining an amount for profit to or' for the benefit of Hall, the credit to be allowed appellees would be the reasonable and necessary amount expended less said profit. Relative thereto we believe that the only burden to be cast upon the City would be to show the percentage amount of profit in connection with similar contracts, under the usage and custom of those in the business of performing similar work. Of course the City would not be limited to such a showing.

Accordingly, we grant the motions for rehearing of Rattikin Title Company and Harvey G. Pippen and thereupon we reverse the judgment rendered *non obstante veredicto* (insofar as it purports to constitute a final judgment) and remand the cause for further proceedings consistent with this opinion. The costs of appeal are decreed against Rattikin Title Company and Harvey G. Pippen.